MARY JONES, and MARY JONES an Infant by her Next Friend, v. KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY, Appellant.

In Banc, December 23, 1903.

1. **Practice:** DEMURRER: REVIEWABLE ON APPEAL. A motion for a new trial relates only to matters that are preserved by the bill of exceptions. The petition, the demurrer and the judgment of the court on the demurrer, constitute a part of the record proper, and that judgment is reviewable on appeal without any assignment in the motion for new trial that the trial court erred in overruling the demurrer.

2. ———: ———: WAIVER. A defect appearing on the face of the petition can be reached only by a demurrer, unless it is such a defect as affects the validity of the cause of action, rendering the petition insufficient to support a cause of action, in which case the defect can be neither waived nor cured, but can be brought up on motion in arrest or during the trial. But if it is a defect not fatal to the right to recover, it is one that can be waived, and unless brought to the attention of the trial court by demurrer, or if the defendant answers over on the merits after the demurrer is overruled. it will be considered waived.

3. ———: ———: ———: NECESSARY PARTY: TRUSTEE OF EXPRESS TRUST: BENEFICIARY. An unnecessary party can be dropped at any time without affecting the rights of the other named parties who are necessary. And where the statute declares that a trustee of an express trust may sue in his own name without joining the person for whose benefit he sues, the joining of the beneficiary, if not forbidden by statute, is unnecessary, but is not fatal to the action.

4. ———: ———: ———: ———: WIDOW AND CHILDREN: KANSAS STATUTE. The Kansas statute creates a liability against a railroad company for damages due to any of its employees in consequence of any negligence of its agents, and declares that the damages to be recovered shall inure to the exclusive benefit of the widow and children, and then provides that where the deceased employee is not a resident of that State, the suit may be maintained by the widow. *Held,* that this statute makes the widow the trustee of an express trust, *and* that the suit may be maintained by her alone, but for the use of herself and the children; and that the joining of the children as parties plaintiff is not necessary, but if that is done, it is not such a defect as defeats a cause of action.

5. ———: SUIT FOR INFANT: HOW BROUGHT. When a suit is prosecuted in the name of an infant, it must run in the name of the infant as plaintiff by its guardian or next friend, and not in the name of the guardian or next friend for the infant. The infant is the plaintiff, not the guardian or next friend.

6. Negligence: MASTER AND SERVANT: PRIMA FACIE CASE. Proof that the servant was injured in the master's service is not sufficient to make out a prima facie case for him.

7. ———: ———: RISKS INCIDENT TO BUSINESS. Dangers of a collision by a regular train with cars running loose and unattended from a side track on to the main track, are not among the usual and ordinary hazards incident to the business of an engineer in charge of a regular train on the main track.

8. ———: ———: ———: BURDEN. The burden is on the company in such case to explain the collision and consequent injury to the engineer.

9. ———: ———: ———: FELLOW-SERVANT. The engineer in charge of a regular train on the main track is not a fellow-servant with those employees whose duty it is to put on the brakes of the cars while they are on the side track or to block them, so that they will not be driven by an ordinary storm on to the main track. It is the master's duty to furnish the engineer in such case a reasonably safe field of operation. The servants to whom are intrusted the duty of preventing loose and unattended cars from escaping from the side track on to the main track, act for the master and perform his duty, and if they are negligent it is his negligence.

Vol 178 mo—34

10. ———: LOOSE CARS: PRESUMPTION: BURDEN.   Where loose and un-
attended cars are found running on the main track so as to im-
peril the life of a servant on a regular train in the due perform-
ance of his duty, the presumption is that the master did not use
reasonable care to hold his cars on the side track from which they
had escaped, and the burden is on him to prove that he performed
his duty in this respect.

11. ———: ———: STORM: DUTY OF RAILROAD.   If the storm which
drove the railroad's cars from a side track onto the main track, and
caused a collision with a regular train running on time, was such
as common experience in the vicinity taught people to expect, it
was the duty of the railroad to have expected it, and to have
guarded against the escape of the cars by setting the brakes or
by some other provision to prevent their escape.

12. ———: LOOSE CARS: DERAIL SWITCH: MASTER'S DUTY: CONTINUING
IN SERVICE.   The fact that there was no derail switch from which
the loose cars might escape from the side track onto the ground,
was not *per se* negligence.   The law imposes on the master no
higher care than that which is denominated reasonable, which means
that he is to do all that a reasonably prudent master, mindful
of the dangerous character of his business, would ordinarily do
to protect the lives of his servants.   Nor was the maintaining
of the side track without the derail switch such an obvious danger
as to authorize the court to instruct as a matter of law that it
was negligence in deceased to continue in the service of the rail-
road as an engineer on a regular train after he knew there was no
derail switch.

13. ———: ———: INSTRUCTION: "FASTEN AND SECURE."   Where all
the evidence the jury had heard about fastening and securing cars.
on a side track was by means of brakes and blocks, it was not.
error to instruct the jury that if defendant had "negligently failed
to fasten and secure" said cars, etc.   Those words "fasten and
secure" do not under the circumstances imply the duty of making
the cars absolutely incapable of getting loose.   Especially can they
not be held so to mean, if there was also given another instruction
telling the jury that defendant was not bound to use any partic-
ular device to prevent the cars from escaping, but only reasonable
and ordinary care, taking into consideration appliances and means
in ordinary use, and if there was still another which told them that
they were not to look to one instruction, but that all the instruc-
tions must be taken together.

14. ———: MEASURE OF DAMAGES: EARNING CAPACITY: WRONGFUL IN-
STRUCTION.   The measure of damages in a case like this is not all the
wages that the husband and father of the plaintiffs would probably
have earned during the period of his life expectancy, and an instruct-
ion liable to be so interpreted can not be approved for a precedent,
but when it is apparent, from the verdict rendered. that the jury did
not put this interpretation on it, the judgment will not be reversed.
because the instruction was given.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry*, Judge.

AFFIRMED.

*L. F. Parker* and *Pratt, Dana & Black* for appellant.

(1)   The requests which were made by defendant at the close of plaintiffs' case and at the close of all the testimony, that a verdict in its favor be directed, should have been granted by the trial court.   To entitle plaintiffs to the submission of their cause to a jury it was necessary for them to overcome certain presumptions and prove affirmatively certain facts.   As to the presumptions: Wood's Master and Servant, secs. 382, 419; 2 Thompson on Negligence, p. 1053, sec. 48; Railroad v. Wagner, 33 Kas. 666; Telle v. Railroad, 50 Kas. 464. As to the facts necessary to be affirmatively proved: (a) The burden rested upon plaintiffs of proving affirmatively negligence on the part of defendant.   Mc-Dermott v. Railroad, 87 Mo. 285; Bowen v. Railroad, 95 Mo. 268; Murray v. Railroad, 101 Mo. 236; O'Malley v. Railroad, 113 Mo. 319; Dowell v. Guthrie, 116 Mo. 646; Gurley v. Railroad, 104 Mo. 223.   (b) Not only did the burden rest upon plaintiffs to affirmatively prove some such negligence on the part of defendant, but they were limited to, and the burden rested upon them of proving, negligence as alleged in their petition. Current v. Railroad, 86 Mo. 67; Harty v. Railroad, 95 Mo. 368; Telle v. Railroad, 50 Kas. 465; Gurley v. Railroad, 93 Mo. 450; Hite v. Railroad, 130 Mo. 132; Mc-Manamee v. Railroad, 135 Mo. 440; Raming v. Railroad, 157 Mo. 477; Feary v. Railroad, 162 Mo. 75.   (c) The burden rested upon plaintiffs not only to prove negligence as alleged in the petition, but to prove that such negligence was the proximate cause of the injury complained of.   Harlan v. Railroad, 65 Mo. 22; Stepp

v. Railroad, 85 Mo. 229; Hudson v. Railroad, 101 Mo. 13; Schmitt v. Railroad, 160 Mo. 43; Bohn v. Railroad, 106 Mo. 433; Friel v. Railroad, 115 Mo. 503. (2) Under the law of Kansas, introduced in evidence in support of defendant's third plea, no negligence was imputable to defendant, his employer, for not having a derail switch on that side track, as the engineer assumed the risk of its absence. Rush, Admx., v. Railroad, 36 Kan. 138; Railroad v. Schroeder, 47 Kan. 323; Clark, Admx., v. Railroad, 48 Kan. 659. (3) It was not defendant's duty to "fasten and secure" the cars on its side track. Those words gave no proper idea of defendant's duty with regard to the cars. The words imply at least a condition of absolute safety, and that is a fair inference from them and one which most people would make. It is a familiar rule of law and practice that, where there are general allegations of negligence, followed by allegations of specific negligence, the latter control and constitute the issues made by the petition. McManamee v. Railroad, 135 Mo. 447; McCarty v. Hotel Co., 144 Mo. 402; Chitty v. Railroad, 148 Mo. 75. It is well settled that it is error, especially in an instruction attempting to cover, as this did, all the issues in the case, to enlarge the issues, as made by the pleadings and testimony, or vary them. Dahlstrom v. Railroad, 96 Mo. 99; Schlereth v. Railroad, Id. 509; Gurley v. Railroad, 93 Mo. 445; Yarnell v. Railroad, 113 Mo. 579; Melvin v. Railroad, 89 Mo. 106; Jacquin v. Railroad, 57 Mo. App. 331. (4) The court erred in giving plaintiff's instruction 4. The instruction intimated to the jury that there was a question as to the sufficiency of defendant's appliances and means for preventing cars escaping from its side track, which they were to consider and pass upon in the case, when there was no such question, and they should have been told, as defendant requested in its instructions (2 and 5), that these matters were not to be considered by them. It was error to give this instruction which was not pred-

icated upon any evidence.   Stone v. Hunt, 114 Mo. 66; Wilkerson v. Eilers, Id. 245; Railroad v. Railroad, 118 Mo. 599.

*William Moore* and *James A. Reed* for respondents.

(1)   The demurrer to plaintiff's evidence was properly overruled.   While the storm, during which the cars escaped, was a severe one, it was not unusual or unprecedented in that locality.   Even though the storm was severe and unusual, it does not excuse the defendant unless it was so extraordinary and unprecedented that the defendant could not reasonably be expected to anticipate its coming and provide against it. Strohrer v. Railroad, 105 Mo. 192; McPherson v. Railroad, 97 Mo. 255; Brash v. St. Louis, 161 Mo. 433. Whether the storm was one of such violence as to exculpate the defendant, was a question for the jury. Strohrer v. Railroad, 105 Mo. 196.   If the escape of the cars was the result of the concurrence of the storm and the defendant's negligence, plaintiff should recover. Brash v. St. Louis, 161 Mo. 433.   While the burden of proof was upon the plaintiff to prove the negligence of the defendant, it was not necessary that the proof should be direct and positive.   It is sufficient if the facts proven were such as to sustain a reasonable inference by the jury of negligence.   Browning v. Railroad, 124 Mo. 67; Cambron v. Railroad, 165 Mo. 544; Duerst v. Stamping Company, 163 Mo. 608.   And where the evidence is conflicting the question of negligence is one for the jury.   Murphy v. Railroad, 115 Mo. 111; Hamman v. Coal Co., 156 Mo. 232.   Under the conflicting evidence as to whether the brakes were properly set on the cars and whether the defendant should have provided a derailing switch or blocks at LaCygne, the question of negligence or no negligence was properly submitted to the jury under appropriate instructions.

Furthermore, the cars were shown to be in the charge of the defendant's agents at LaCygne, and their escape to the main track and collision with the train, of which the deceased was engineer, raises a presumption, in the absence of explanation, of want of care on part of defendant. The fact that there was a storm is no sufficient explanation. Blanton v. Dold, 109 Mo. 65; Minster v. Railroad, 53 Mo. App. 282; Gallagher v. Illuminating Co., 72 Mo. App. 577; Thomas v. Tel. Co., 100 Mass. 156. Negligence, like any other ultimate fact in issue, may be established by reasonable inferences as well as by direct proof. Blanton v. Dold, supra, citing Barnowski v. Helson, 89 Mich. 523. The duty of the defendant toward the deceased was properly defined and properly submitted to the jury by plaintiff's instruction 3. Whether the defendant negligently violated this duty was submitted in the other instructions, and there was ample evidence to justify the submission of the question to the jury. Hamman v. Coal Co., supra. The law is settled that it was the duty of the railroad company to use reasonable care, at least, to provide a safe and unobstructed track. Henry v. Railroad, 109 Mo. 493; Browning v. Railroad, 124 Mo. 67; Nichols v. Plate Glass Co., 126 Mo. 56; Bender v. Railroad, 137 Mo. 250; Pauck v. Beef Co., 159 Mo. 476. Whether the defendant company discharged the duty imposed upon it by law was, in the case at bar, a question for the jury. Henry v. Railroad, 109 Mo. 488; Bender v. Railroad, 137 Mo. 245. (2) The engineer did not assume the risk. Dickinson v. Railroad, 124 Mo. 146; Doyle v. Trust Company, 140 Mo. 2; Pauck v. Beef Co., 159 Mo. 478; Hamman v. Coal Co., 156 Mo. 232; Duerst v. Stamping Company, 163 Mo. 622; Murphy v. Railroad, 115 Mo. 111.

VALLIANT, J.—David R. Jones, who was the husband of the plaintiff Mary and the father of the infant Mary, was a locomotive engineer in the service of

the defendant and was killed in a railroad accident at LaCygne, a station on defendant's road in the State of Kansas, which accident was caused, as plaintiffs allege, by the negligence of the defendant. The right of action is based on the following statutes of Kansas:

Paragraph 1251, General Statutes of Kansas of 1889, as follows: "Every railroad company organized or doing business in this State shall be liable for all damages done to any employee of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees to any person sustaining such damage."

Also section 422 of chapter 80, Laws of 1868, known as paragraph 4518, General Statutes of Kansas of 1889, as follows: "When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages can not exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

Also paragraph 4519, General Statutes of Kansas of 1889, also designated as section 422a, as follows: "Be it enacted by the legislature of the State of Kansas, that in all cases where the residence of the party whose death has been or hereafter shall be caused as set forth in section 422 of chapter 80, Laws of 1868, is or has been at the time of his death in any other State or Territory, or when, being a resident of this State, no personal representative is or has been appointed, the action provided in said section 422 may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

The plaintiff is Mary Jones, the widow, suing in

her own right, and the same Mary in the capacity of next friend, duly appointed, suing in behalf of the other Mary, an infant five years old, the only child of the deceased.

The negligence charged in the petition is that the defendant placed on its side track at LaCygne three freight cars and negligently failed to perform its duty in that connection in the following particular, viz.: to fasten and secure the cars on the side track; to keep the brakes properly set and the cars properly blocked; to provide the cars with sufficient brakes in good order to hold them in place; to provide the ends of the side track with safety or derail switches or other devices of the kind usually provided by railroads at such places and in common use at such places to protect the main track from loose cars and to prevent cars when not under control from passing from the side track to the main track. The petition states that in consequence of this failure of duty on the part of the defendant, the three freight cars mentioned were suffered to escape from the side track and run loosely and unattended to and upon the main track, where they came into collision with the locomotive engine which the plaintiff's husband was operating, drawing a freight train, and in consequence thereof he received injuries of which on the next day he died.

The answer of the defendant was, first, a plea that the infant Mary was not a proper or necessary party to the suit; second, a general denial; and, third, a plea of contributory negligence, to which was a reply of general denial.

Upon the trial the plaintiff made the formal proof of her appointment as next friend of the infant and that she was the widow, and the infant the only child of the deceased. Concerning the accident the testimony for the plaintiff tended to show as follows:

At LaCygne the defendant's road runs north and south. On a side track at that station, on the evening

of June 25, 1897, there were several freight cars stationed. Of these the one farthest south was a coal car loaded with ties, next north after a space of 200 or 300 feet was a stock car, and attached to it on the north end was a box car. From the north end of the switch to a point beyond where the box car and stock car stood it was slightly up grade. From the stock car to the coal car it was nearly level; beyond the coal car to the main track it was slightly down grade, and the main track was down grade from the end of the switch to the place of the accident. Between eight and nine o'clock on the evening of the day named, a storm of wind, rain and hail came from the northwest, which drove the three cars down the side track, out on the main track, and down it for a distance of a mile, at which point a locomotive drawing a freight train going north came forcibly in collision with the coal car and caused a wreck of the engine. The plaintiff's husband who was the engineer in charge of the locomotive received severe injuries, of which he died the next day. It was a dark night; the engine was running at the usual rate facing the wind and rain. The train was running on its schedule time, and had the right of way; the deceased was in the discharge of his regular duty. It was a severe but not an unprecedented storm; the damage done by it in and around the station was not serious. No houses or trees were blown down. Storms as severe were not so unusual in that vicinity as to be beyond expectation. This switch track was not equipped with what in the testimony was called a "derail switch," although a considerable number of side tracks of defendant along that part of its road between Fort Scott and Kansas City did have that equipment. A "derail switch" is a device which when set will cause a car running loose on the side track to run off its rails to the ground before reaching the main track, and it is contrived to prevent accidents of this kind. The testimony for plaintiff also tended to show that the brakes were not set on the

three cars that escaped and that they were not blocked or otherwise fastened. These three were the only cars of those on that side track that night that were driven out by the storm.

The testimony for the defendant tended to prove that the three cars in question were supplied with good and sufficient brakes; that the brakes were set, and that as set, they afforded all the security required for holding the cars in place under ordinary conditions or conditions that might reasonably be anticipated. That the storm was of such unusual force that it could not have been reasonably anticipated. That the device called the derail switch was not usually used in side tracks level or nearly so, as this was, but only where the grades were steep. That a derail switch was not only not necessary but not desirable in a side track like this; that such a switch had its own difficulties and drawbacks, which rendered its usefulness in the long run questionable.

The case was given to the jury under instructions which will be hereinafter discussed. The trial resulted in a verdict and judgment for the plaintiff for $5,000. The defendant appeals.

I. It is assigned as error that the minor child of the deceased was not a proper or necessary party. There was a demurrer to the petition on that ground, which was overruled, whereupon the defendant filed an answer in which it set up the same objection to the petition. The defect, if it was such, appearing on the face of the petition, could be reached only by demurrer, unless it was such a defect as affected the validity of the cause of action, rendering the petition insufficient to support a judgment, in which case the defect could be neither waived nor cured, but could be brought up on motion in arrest or during the trial. But if it was not a defect fatal to the right of recovery, if it was one that could be waived, it will be deemed to have been waived unless it was brought to

the attention of the court by demurrer, and unless, if the demurrer was overruled, the defendant declined to plead to the merits. Pleading to the merits after such a demurrer is overruled waives the right to complain of the ruling. The insertion in the answer of a clause which was only a repetition of the demurrer, did not avoid the effect above stated of answering over. Nor can that consequence be avoided by inserting in the motion for a new trial, as was done in this case, that the court erred in overruling the demurrer. The petition, the demurrer and the judgment of the court on the demurrer, constitute a part of the record proper, and that judgment is reviewable without exception, whereas the motion for a new trial relates to matters only that are preserved by the bill of exceptions. Unless, therefore, the alleged defect of parties in this case is of such a nature as to defeat the right of action, the point is not properly before us for review.

The defect as stated in the demurrer and in the answer is, that the infant Mary Jones "is not a proper or necessary party." If she is merely an unnecessary party, she may be dropped at any time (Patterson's Mo. Code Pleading, 956, 1001; Powell v. Bank, 146 Mo. 620) without affecting the rights of the other plaintiff who is a necessary party. There is no obscurity in the meaning of the term "not a necessary party;" it means that the suit can proceed just as well without her, and in that event, if her presence has the effect to hinder or burden the case, she may be dropped. But the meaning of the term "proper party" is not so clear. The word "or" which the pleader has here used, may be used in two forms. In one it corresponds to *either,* and in that sense the term "proper or necessary" would mean "either proper or necessary," that is, one or the other. In the other form it means to express the same thing alternately in different words; in that sense the term "not proper or necessary" would imply that it was not proper, that is, not necessary. The latter is

probably the sense in which the pleader used the term; if it is not used in that sense then there is nothing to show what was meant by saying that the infant was not a proper party. If she was merely an unnecessary party, her presence in the case is not such a defect as would justify a reversal of the judgment.

Appellant takes the position that the infant can not maintain the suit because the Kansas statute does not confer on her the right of action, and that the widow alone can not maintain it because she is not alone entitled to the proceeds. To sustain this position, appellant relies on McGinnis v. Mo. Car & Foundry Co., 174 Mo. 225.

In that case, it was held by this court that the liability created by a statute of Illinois, similar in character to that created by the Kansas statute with which we are now concerned, could not be enforced in this State at the suit of one who was not authorized by the statute of Illinois to maintain the suit. The Illinois statute conferred the right of action on the personal representative, that is, the executor of the will or administrator of the estate of the deceased, and it was held that the liability and the right of action, being created by statute, only the person to whom the statute gave the right could maintain the suit, and if, as in that case, the foreign statute gave the right to one whose authority extended not beyond the limits of his State, he could not sue here. It was also held in that case that our statute, section 548, Revised Statutes 1899, which undertook to authorize the appointment of a person in this State, other than the person specified in the foreign State, to maintain the suit, was invalid.

The Kansas statute, however, on which this suit is based, differs in the feature we are now considering, from the statute of Illinois. The Kansas statute declares the liability, gives the right of action to the personal representative of the deceased, specifies that the damages to be recovered shall inure to the exclusive

benefit of the widow and children, or next of kin, and then provides that where the deceased is not a resident of the State, the suit may be maintained by the widow, or, if there is no widow, then by the next of kin. The right of the widow, therefore, to maintain this suit is in line with the law laid down in McGinnis v. Foundry Co., above mentioned. The damages to be recovered are to inure, according to the express terms of the statute, to the exclusive use of the widow and children or next of kin. Therefore, when the administrator sues and recovers, he does so, not for the use of the estate in general, but for the use of the beneficiaries named; he is, in effect, created by the statute a trustee of an express trust for the use of the widow and next of kin. And if there is no administrator, or if the deceased was not a resident of Kansas, the widow may sue. But when she sues and recovers it is not for her own use alone, but for the use of herself and the children or next of kin; she thereby becomes the trustee of an express trust, so created by the statute which created the liability.

It is argued in behalf of appellant that although the widow, by the law of Kansas, may sue alone, yet by force of our statute, section 547, Revised Statutes 1899, she can not do so because she is not alone entitled to that which may be recovered. The language of our statute is: "Whenever a cause of action has accrued under or by virtue of the laws of any other State or Territory, such cause of action may be brought in any of the courts of this State, by the person or persons entitled to the proceeds of such cause of action: Provided, such person or persons shall be authorized to bring such action by the laws of the State or Territory where the cause of action accrued."

That statute was intended to aid a resident of this State in availing herself of the provisions of the foreign statute, and it should be construed as an enabling, not as a disabling statute. It was intended to confer a right, not to restrict one; if by the law of Kansas the widow

had the right, our statute was not designed to take it from her. This construction renders that section of our statute in harmony with section 541, Revised Statutes 1899, of our practice act, which provides that a trustee of an express trust may sue in his own name without joining with him the person for whose benefit the suit is prosecuted. But whilst a trustee of an express trust may sue in his own name without joining the person for whose benefit the suit is prosecuted, he is not forbidden to join the beneficiary, and if he does so, the most that can be said in criticism of the act is that it was unnecessary.

In the case at bar, the widow and her child were the sole beneficiaries of the suit, so declared by the Kansas statute, and by the same statute the widow was authorized to sue and recover for the benefit of herself and her child. She might have sued alone, as trustee of the express trust, using apt words to show her authority, and if she has joined the child with her in the suit, it was a useless act, but it has impinged no one's rights.

Strictly construing the petition herein, the child has not been made a party to the suit. When a suit is prosecuted in the name of an infant, it must run in the name of the infant as plaintiff by its guardian or next friend, and not in the name of the guardian or next friend for the infant. The infant is the plaintiff, not the guardian or next friend. An executor or administrator sues in his own name because the title is in him, but the title to the infant's property or choses in action is not in the guardian or next friend, but in the infant. In this case, if the infant was a necessary party, the petition would be subject to criticism, because the plaintiffs are named in the petition as Mary Jones for herself and the same Mary as next friend to the child, the legal effect of which, when taken with the other averments of the petition, is, that the plaintiff is Mary Jones as widow, suing for herself, and the same Mary suing as trustee of an express trust for her child. The statute of

Kansas gives her the right to sue in that capacity and our statute does not abridge that right.

II.   The refusal by the court of the instructions asked in the nature of a demurrer to the evidence is assigned as error.

As the foundation for their theory on this branch of the case, the learned counsel for appellant state three propositions, viz.: that the burden is on the plaintiff to prove, first, negligence on the part of the defendant; second, the specific negligence charged; and, third, that the negligence was the proximate cause of the injury; and to these, they add that, in the beginning, the plaintiff is met by the presumptions, first, that the master has performed his duty; and, second, that the catastrophe was the result of the usual and ordinary hazards incident to the business, the risk of which the servant assumed when he entered into the service.   The proposition that the burden is on the plaintiff to prove his case is conceded, and that the presumption is in the defendant's favor in the beginning, follows as a corollary.   It is also beyond dispute that there are dangers incident to the business of operating a locomotive on a railroad, even when the business is conducted with due care on the part of both master and servant; that of such dangers, the servant assumes the risk, and if he is injured through an accident that is incident to the business, without fault of the master, he can not recover.   Proof, therefore, of the mere fact that the servant was injured in the master's service is not sufficient to make out a prima facie case for the plaintiff.   To that extent, the authorities cited in the brief for appellant sustain those propositions.   [Yarnell v. Railroad, 113 Mo. 570; Murphy v. Railroad, 115 Mo. 111.]   But when cars are found running loose and unattended on the main track at a time and place when and where they are liable to cause the wreck of a regular train, it can not be said that the danger so incurred is one of the usual and ordinary hazards incident to the business.   It is not a usual

and ordinary occurrence in a prudently managed business for cars to be found running loose in that manner: it does not ordinarily occur unless some one has neglected his duty, and it is not, therefore, a risk assumed by the servant. And since it is an occurrence not likely to happen in the orderly course of business, when it does happen and a servant is injured in consequence, it calls for an explanation. Upon whom does the burden of making the explanation devolve? It devolves either on the injured servant or on the master. If it was the duty of the injured servant to attend to those cars on the side track, to see that they did not escape, then the burden of making the explanation devolved upon him. But if he had nothing to do with securing the cars in their position on the side track, if his duty related only to the operation of the locomotive engine, then there is no explanation due from him.

The question of the negligence of a fellow-servant does not enter into this case, because, as was shown by the pleadings and proof, the statute law of Kansas makes the railroad company liable to a servant for the consequences of the negligence of a fellow-servant. But, even at common law, the negligence charged in this case was not the negligence of a fellow-servant. It is the master's duty to furnish the servant reasonably safe appliances and a reasonably safe field of operation. This duty, of course, in an extensive business, the master can not attend to in person, but must intrust to servants, but the servants to whom it is intrusted act in the master's place and perform his duty; and if they are negligent, it is his negligence. It is necessary to observe a distinction between the performance, on the one hand, of the work for which the business is undertaken, and the furnishing, on the other, of the appliances and field of operation with which and in which to do the work: in the one, the servants are working for a common master; in the other, the master, either *per se* or *per alium*, is performing his duty to his servant. And whether

he acts *per se* or *per alium,* if he fails to exercise reasonable care, he is negligent.

It was the duty of the master in this case to use reasonable care to prevent those cars escaping, and, therefore, when they were found running loose, so as to imperil the life of the servant who was in the due performance of his duty, the presumption is that the master did not use reasonable care to hold his cars on the side track, and the burden is on him to prove that he performed his duty in this respect; it devolves on him to explain the occurrence.

It was not attempted, on the part of the defendant, to prove that cars with good brakes and the brakes properly set, were liable to escape under conditions that might reasonably be anticipated.   On the contrary, when confronted with the fact that the side track was not equipped with a derail switch, the defendant offered testimony to prove, and now contends, that with good brakes and the brakes properly set, the cars were secure under ordinary conditions.   But if the brakes were not set or the cars blocked, they were liable, under ordinary conditions, to do just what these cars did; therefore, when it was shown that they did escape, the presumption arose that there was something wrong, either with the brakes or their setting.   The defendant, to meet this presumption, undertook to prove that the cars, although the brakes were set, were driven out by a storm of such extraordinary force that it was not to have been reasonably anticipated.   If that was the fact, the plaintiff was not entitled to recover (Stoher v. Railroad, 105 Mo. 192; McPherson v. Railroad, 97 Mo. 253; Brash v. St. Louis, 161 Mo. 433), and the jury were so instructed.

That there was a severe storm on that occasion is shown by the evidence on both sides, and that these cars were moved out by the wind is a natural inference. Whether the wind was strong enough to have moved them if the brakes had been set, was an open question.

That it was an unprecedented storm, even the evidence of the defendant can hardly be said to prove; that it was a storm of such unusual violence as that it could not have reasonably been anticipated by one whose duty it was to take measures to guard against storms, is a fairly debatable proposition under the evidence. There were no substantial buildings or large trees blown down. The photographs, which defendant put in evidence, which were taken shortly after the storm, show little, if any, effect of the wind. There was evidence to the effect that storms of as great force, though not frequent, were to be expected, and that sometimes storms of greater severity had occurred in that vicinity. There was a reference by one of defendant's witnesses to a cyclone cellar, to which his thoughts turned when this storm arose, but to which he did not find it necessary to go, on this occasion. The reference only goes to show that a cyclone cellar was a contrivance not unknown to people in that vicinity. Although the storm was severe, yet if it was such a storm as common experience taught people in that vicinity to expect, it was the duty of the defendant to have expected it and to have made reasonable provision to guard against its effects. The testimony as to the force of the storm and as to its being the cause of the accident, was conflicting. So far as the questions relating to the force and effect of the storm were involved, the case was given to the jury under the following instruction:

"If you believe from the evidence that the cause of the cars being on the main track was an unusually violent storm, and that, if there had not been such a storm they would not have run out, then the defendant was not in law at fault for their being there, and, without regard to other questions in the case, you should find your verdict for defendant."

That instruction presented that feature of the case to the jury in at least as favorable light as defendant could have asked. After the verdict of the jury, under that instruction, the defendant has no right to ask an

appellate court to say that the cause of the accident was an unusually violent storm unassisted by any negligence of the defendant.

On the charge in the petition, that the brakes were not set, the testimony was conflicting. Appellant argues, in reference to this feature of the case, as though the only evidence in support of the charge was that by one witness who testified that as he passed the coal car which was loaded with ties, he tested the brake by giving it a kick with his foot, and discovered that it was loose. This, he said, he did from force of habit, having formerly been in the railroad business and accustomed to apply that test in his inspection of cars to see if the brakes were set. We infer from the testimony of one of the defendant's witnesses that it was not an usual manner of examining the brakes; he testified that he kicked a brake on one of these cars in passing, and thereby found it firmly set. But that was not the only nor was it the best evidence that the brakes were not set. The fact that the cars went out by the force of a wind which the jury found was not sufficient to have drawn them out if the brakes had been set, tends to show that they were not set.

The defendant's testimony tended to show that this coal car was loaded with ties about three o'clock in the afternoon, and left on a part of the side track which was nearly level, and that before leaving it, the foreman set the brakes. It was later in the afternoon or evening, probably seven or eight o'clock, when, according to the plaintiff's witness, he kicked the brake and found it loose.

The defendant's testimony in reference to the brake on the two other cars was not so positive. One witness passed within a few feet of them and looked at them as he passed, and the brakes seemed to be set. He did not get on the cars or touch the brakes. Another witness testified that he came in on a freight train that afternoon and as they had to leave some cars on the side

track, it became necessary to shove these two cars which were then standing farther north, to the position in which they were finally left, and they did so. He testified that the two cars were coupled together; that the brake on the south end of the north car was set; that the cars were shoved by the train without first loosening the brake, and that the brake held the wheels on one end of the car so that they did not turn. He left the cars in that condition, so that, according to his testimony, there was but one brake set on those two cars when he left, and there was no evidence that any one set the brakes after he left. According to this witness, those two cars were switched or shoved by the train with that brake set, and they were left without any further setting.

One of defendant's expert witnesses, referring to the loaded coal car, said, that a jar such as would be made by the two other cars coming against it, would be apt to loosen the brake on the coal car. It is just as reasonable to infer that the jar these two cars received in switching would loosen the one brake which was set. That was the substance of the defendant's testimony as to the setting of the brakes on those two cars, and it was far from convincing. At best, there was only one brake set, and that had been subjected to the shock incident to switching. If the jury reached the conclusion that the brakes were not properly set on those two cars, we can find no fault with their verdict. Those two cars were empty cars. They presented to the wind a broad surface and were comparatively easily moved, and coming with the force of the wind against the loaded coal car, even if the brakes on the latter were set, would probably loosen them, and, as the grade was from that point down, the cars would easily move down the track.

The fact that there was no derail switch there was not *per se* negligence, and it was not so treated by the court. Since the law imposes on the master no higher degree of care than that which it denominates reasonable, it does not require him to furnish absolutely safe or even the best

known appliances. Yet when his conduct in this respect is on trial, it is proper for the jury to know what appliances are in common use in that kind of business. It has been said by a very high authority that in the operation of a dangerous business, the master is guilty of negligence if he fails to furnish the best, well-known and reasonably attainable implement. [Mather v. Rillston, 156 U. S. 391.] We do not understand that case as laying down any stricter rule in reference to the master's duty in that respect than that he was to do all that a reasonably prudent master, mindful of the dangerous character of his business, would ordinarily do to protect the lives of his servants. That is the law in this State.

We do not, therefore, say that the defendant in this case was negligent because the side track was not equipped with a derail switch, although it is quite plain that if it had been so equipped this accident would not have occurred. And before passing this point, we may as well say now (since it is the only foundation for the plea of contributory negligence) that the maintaining of the side track without the derail switch was not such an obvious danger as to authorize the court to pronounce the act of the locomotive engineer in continuing in the service negligence as a matter of law. If the danger was not obvious to the master, it was not obvious to the servant. Therefore, as it affects both the master and the servant, the question of whether the side track without the derail switch was a reasonably safe appliance was a question for the jury. If the master, in the exercise of his right to choose between two appliances, chooses the one less safe, the fact should make him the more careful to properly use the one he selects.

Under the evidence in this case, the trial court did right in refusing the instructions looking to a nonsuit.

III. Appellant complains of the following language in instruction 1 given for the plaintiff:

"The court instructs the jury that if you believe and find from the evidence that . . . on or about said date the defendant placed or had on its switch or side track at LaCygne, Kansas, three certain freight cars and negligently failed and omitted to fasten and secure said cars on said switch or side track, and that by reason of said negligent failure and omission, if it was negligent, said cars escaped from said side track, etc., then your verdict should be for plaintiffs."

The objection is to the words "fasten and secure," and it is argued that these words imply the duty of making the cars absolutely incapable of getting loose. Even standing alone, the instruction would not have been liable to the meaning. The greater part of the evidence for both plaintiff and defendant related to the subject of fastening and securing the cars on the side track by means of brakes and blocks. It was shown that sometimes, when brakes were not considered sufficient, blocks were used, but when the brakes were sufficient, blocks were not used. All the fastening or securing that the jury had heard about was by means of brakes and blocks, and they could not have interpreted the instruction as meaning that it was the duty of the defendant to have anchored the cars with chains. The instruction uses the term "negligently failed," and it was followed by an instruction defining the word "negligent." Another instruction for plaintiff distinctly told the jury that the defendant was not bound to use any particular device to prevent the cars from escaping, but only reasonable and ordinary care, taking into consideration appliances and means in common use. The instruction given at the request of defendant also made it impossible for a jury of ordinary intelligence to have given the interpretation to the words "fasten and secure" that appellant apprehends was given them. Those instructions, on this point, were to the effect that the jury must not look to any one instruction alone, but all the instructions were to be taken together; that they

must look to the evidence alone for the facts; that the defendant did not owe its servant any duty to make his surroundings absolutely safe, but, in that respect, to use only "such care as a reasonably careful employer would use in regard to the place where and the appliances with which he had to work. And so, if you believe from the evidence that defendant used such care with regard to its tracks and cars, and that, in spite of it, the collision took place, there was no one in law to blame therefor, and your verdict must be for the defendant.'' We discover no error in plaintiff's first instruction.

Appellant, in its brief, says that the second instruction for plaintiff is erroneous, but does not specify the particulars in which it is so, and we perceive none.

The third instruction for plaintiffs is complained of because it says: "and in determining whether it [the defendant] did use reasonable and ordinary care in that regard, you may take into consideration the appliances and means, if any, which were adopted and in common and general use at the time for that purpose, at similar places, by prudently and properly conducted railroads.''

The argument is that there was no evidence tending to show that there was any appliance in general use which was not in use by the defendant at this place. The evidence for the plaintiff tended to show that it was no unusual occurrence for cars to be blocked on a side track; that evidence was answered by the defendant with evidence tending to show that when the brakes were good and well set and the track level, blocks were not ordinarily used. On the part of the plaintiff, the evidence tended to show that derail switches were in common use on this and other railroads; this evidence was met by the defendant with expert evidence tending to show that such switches were not used when the side track was as nearly level as this was, and that they were of questionable utility any way. The court would have been compelled to have usurped the province of the jury

and have decided those questions of fact in the defend-
ant's favor, before it could have refused the plaintiff's
third instruction. It is also contended that the instruc-
tion was erroneous in omitting to call the jury's atten-
tion to the risk assumed by the servant when he went into
the business. There was nothing in the evidence on
which to predicate a hypothesis that the accident was the
result of a condition ordinarily incident to the business,.
unaided by the negligence of the master.

The storm theory was the only real defense in the
case. If the storm was not of such unusual violence
that it could not reasonably have been anticipated and
its effects guarded against, then, the cars would not have
been found running wild, unless the ordinary
precautions to hold them in place had been neg-
lected. There was evidence tending to show
that the accident resulted from the effect of such
an unusual storm, and the jury were instructed, in very
clear language, to render their verdict for the defendant
if they found that to be the fact. And, in another
equally explicit instruction, the jury were told that if the
death of the plaintiff's husband resulted from one of the
ordinary perils incident to the business, she could not
recover. Appellant has no cause to complain of the
third instruction.

The instruction as to the measure of damages is as
follows:

"The court instructs the jury that if you find for
the plaintiffs you should, in assessing their damages,
assess the same with reference to the pecuniary loss, if
any, sustained by the wife and child of the deceased:
first, by fixing the same at such sum as you may believe
and find from the evidence would equal the probable
earnings of the deceased, taking into consideration his
age, business capacity, experience, habits, health and
energy, during what would probably have been his life-
time, if he had not been killed; second, by adding these
to the value of his services in the attention to and care

of his family and the education of his child, in all not to exceed the sum of ten thousand dollars.''

It is complained of that instruction that it gives, as the measure of damages, all the wages that the deceased would probably have earned during the period of his life expectancy, without taking into consideration natural contingencies, and without considering that part of his earning at least would not necessarily or naturally have been given to his wife and children. The instruction is liable to that interpretation, although in the first part of it the jury are told that they must assess the damages with reference to the pecuniary loss, if any, sustained by the wife and child. Reading all the clauses of the instruction together, they may be construed to mean that the jury are to calculate from the evidence the probable amount of earnings of plaintiff's husband if he had lived the full period of his life expectancy, then to estimate how much of that amount would probably have inured to the benefit of the wife and child and to that add the pecuniary value of the husband's and father's personal service in the care, maintenance and rearing of his family. But since the instruction as given is liable to the construction appellant puts upon it, we can not give it our approval for a precedent. The evidence showed that the plaintiff's husband's life expectancy was thirty-two years, and that he was, at the time of his death, earning $1,500 a year. At that rate, he would have earned in the full period of his life, over $40,000. The plaintiff was not entitled to all the wages her husband, on that basis, would have earned. It was proper for the jury to take into account what he was earning, his capacity to earn, and probable duration of his life, but they ought also to take into account the contingencies to which his life was subject and estimate as best they could from the evidence how much of his earnings would probably have inured to his wife and child, and what the pecuniary value of his services to them would have been. Of course, the estimate on either of

these points must, to a great extent, partake of the nature of conjecture, but as we have no more certain means we must make the wisest use we can of the means we have.

But although we can not approve the instruction, we do not feel justified in reversing the judgment on that account, because it is very apparent that the jury did not put on it the construction appellant does, since they rendered their verdict for only $5,000, when, under the instruction they were at liberty to assess the damages as high as $10,000, that being the limit of the Kansas statute. No one can say, under the circumstances of this case, that $5,000 was too much for the loss of the husband and father of this family.

We are expressly forbidden by statute to reverse a judgment for an error not "materially affecting the merits of the action." [Sec. 865, R. S. 1899.]

The court refused several instructions asked by defendant, and the refusal of them is assigned as error. But what we have already said expresses our views on those instructions, and discussion of them would be, in the main, a repetition of what has gone before.

There was no error in admitting evidence that derail switches were in use in other side tracks on this road, nor in admitting in evidence the printed rules of the company regarding the precautions to be taken to prevent cars escaping from a side track.

On the whole record we find no error "materially affecting the merits of the action." The judgment is affirmed. *Brace, Gantt* and *Fox, JJ.,* concur; *Robinson, C. J., Marshall* and *Burgess, JJ.,* concur in the result.