OSWALD FRANZ and ARTHUR FRANZ, Respondents, v. WM. BARR DRY GOODS COMPANY, a Corporation, and BUCHHOLZ, Appellant.

St. Louis Court of Appeals, May 26, 1908.

1. AGENCY: Holding One Out as Agent. Where a corporation maintained a department store and arranged with another person to conduct a cafe in one part of the store building, for a percentage of the gross receipts of the cafe, advertising the cafe in the elevators of the building as the corporation's cafe, and where there was nothing to notify the public or persons dealing with the corporation that the cafe was not owned by it as were all other departments of the store, one who sold supplies to the manager of the cafe and received payments with the manager's checks, had a right to assume that he furnished the supplies to the corporation and if he was led to believe by such circumstances that the manager had authority to act for the corporation in the purchase of such supplies he could recover from the corporation their value.

2. ————: Instruction: Evidence. In an action in such case by the seller of the supplies against the corporation and the manager of the cafe, it was error to authorize a verdict for the manager on the theory that he was an employee of the corporation; he was equally liable with the corporation to the plaintiff for the value of the supplies furnished.

3. PRACTICE: Parties: Misjoinder of Parties. In an action in assumpsit for the price of goods sold and delivered, brought against more than one defendant, the plaintiff may recover if it shows either of the defendants is liable; the improper joinder of parties in such case would not defeat a recovery.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields,* Judge.

REVERSED AND REMANDED.

*Nagel & Kirby* for appellant.

(1) (a) In actions before a justice it is no more permissible to sue on one cause of action or theory and recover on another than it is in the circuit court. McClure v. Feldman, 184 Mo. 710; Turner v. McCook, 77 Mo. App. 196; Penninger v. Reilley, 44 Mo. App. 255. (b) Allegations or admissions in a pleading are conclusive upon the pleader. Cousins v. Bowling, 100 Mo. App. 452; Kessner v. Phillips, 189 Mo. 515; Davis v. Bonds, 75 Mo. App. 32. (2) A Missouri business corporation cannot enter into a copartnership with an individual, nor be held jointly liable with it on the theory of either an actual partnership or an estoppel to deny a partnership. Bank v. Oliver, 62 Mo. App. 393; Moorshead v. Railway, 119 Mo. App. 623. (3) The two defendants could not be sued jointly on the theory that they were principal and agent, because even in the case of an undisclosed principal where the agent makes himself liable, there is no joint liability. Provenchere v. Reifeiss, 62 Mo. App. 50; 16 Enc. Pl. & P., p. 898.

*E. N. Robinson* for respondent.

(1) Defendant company is liable in this case: Because it created Buchholz manager of one of its departments; it knowingly permitted him to order supplies for that department under its name and it received the benefit of the supplies so ordered. It cannot escape liability by reason of a secret arrangement unknown to the plaintiffs. Suddarth v. Empire Lime Co., 79 Mo. App. 585; St. Louis Gunning Adv. Co. v. Wanamaker & Brown, 115 Mo. App. 270; Hoppe v. Saylor, 53 Mo. App. 4; Pub. Co. v. Warehouse Co., 123 Mo. App. 13.

(2)   The statement filed in this case is sufficient.   It declares against each of these defendants upon a single liability; and a dismissal as to one of the defendants, or a judgment in his favor, leaves a good cause of action as against the other defendant.   Ross v. McAnaw, 72 Mo. App. 99; Alter v. Frick, 62 Mo. App. 453; Rider v. Kirk, 82 Mo. App. 120; Brown v. Woods, 48 Mo. 330; Berkson v. Cable Co., 144 Mo. 214.   (3)   The question of agency and as to whom credit was given is a question for the jury.   Hovey v. Pitcher, 13 Mo. 191; Hockett v. Van Frank, 105 Mo. App. 384.

BLAND, P. J.—The suit was commenced in a justice's court by the filing therein of the following statement (omitting caption) to which was attached an itemized account of the poultry, etc., sued upon:

"Plaintiffs state defendants are indebted to them in the sum of $238.05 for poultry, game and produce furnished defendants as per statement herewith filed. Said articles being furnished defendants for use and consumption in the restaurant known as 'Barr's Cafe,' operated by defendants.

"Wherefore plaintiffs pray judgment for said sum. of $238.05, and for costs."

In due course the cause was appealed to the circuit court where, on a trial *de novo,* the jury returned the following verdict:

"We, the jury in the above-entitled cause, do find in favor of the plaintiffs and against the defendant, Wm. Barr Dry Goods Co., and we assess the plaintiffs' damages at the sum of two hundred and thirty-eight and 5-100 dollars.

"And we find in favor of the defendant, C. A. Buchholz."

The Wm. Barr Dry Goods Company appealed.

Plaintiffs are wholesale commission and produce merchants in the city of St. Louis.   Defendant, Wm. Barr Dry Goods Company, is a corporation and owns

and operates a department store, in the city of St. Louis, having about twenty-seven distinct departments. On the fourth floor of the Barr Building is what is known as "Barr's Cafe." It has no direct communication with any other department of the store but both the passenger and freight elevators run to the fourth floor and signs are posted on the passenger elevators giving notice that the cafe is on said floor. It is kept up for the accommodation of the company's customers. Defendant Buchholz is a caterer and in the year 1904, entered into a verbal contract with the Barr Company, by the terms of which he took charge of and managed the cafe until about June 1, 1906. Under the terms of the contract, the Barr Company agreed to and did furnish and equip the cafe,—also furnished the light, heat and water, and as compensation agreed to take, and received, fifteen per cent of the gross proceeds of the cafe, if they did not exceed $2,000 per month, and twenty per cent of the gross proceeds in excess of $2,000 per month. The company furnished a cashier, who collected all the fares and turned the proceeds over to the treasurer of the company. At the end of each week the proceeds were added up and Buchholz was given a check for the amount coming to him (eighty-five per cent of the proceeds). On his part Buchholz agreed to furnish and pay for all supplies and to employ and pay the waitresses and other help, and to replace or pay for broken dishes, etc. Under this arrangement Buchholz personally managed the cafe and ordered and paid for all the supplies, so far as the evidence shows, except those sued for in this action. In November, 1905, Richard Forrester, who had been the general manager of the Barr Company, retired and Charles A. Coutant took his place. After Coutant took charge, Buchholz, on two or three occasions, interviewed him with respect to the cafe and wanted to know whether he was to continue as manager and if so under what arrangements. Cou-

tant put him off from time to time but told him to keep the cafe going. According to Buchholz, the cafe lost money in the months of January and February, 1906. He communicated this fact to Coutant and wanted to make some definite arrangement with him about the loss and the future of the cafe, but Coutant told him to go ahead, not to close the cafe and he would take care of the losses and him (Buchholz) too. Buchholz continued to run the cafe until June 1, 1906, when he closed it. It was opened the next day by the Barr Company. Plaintiffs' account, as kept on their books, was billed against "Barr's Cafe, Buchholz, Manager," and the account sued on was made out in that way, the name of the Wm. Barr Dry Goods Company being inserted before it was filed for suit. Buchholz received supplies from plaintiffs during most, if not all, the time he managed the cafe and from time to time paid for them, as for all other supplies, by his personal check. After quitting the cafe he wrote plaintiffs as follows:

"June 20, 1906.

"Louis Schaefer, Esq.,

"Union Market, St. Louis.

"Dear Sir: This will inform you that by reason of the recent down-turn in the affairs of the Barr's Cafe, I have been compelled to give up my interest therein. I believe the Wm. Barr Dry Goods Co., which has been conducting the cafe jointly with me, will take care of your bills. If you need any assistance from me with respect to the correctness of your account, or in any manner whatsoever, consider me at your service.

"Let me assure you that I should have severed my connection with Barr's Cafe the first of this year, if it had not been for promises of Mr. Coutant of Wm. Barr Dry Goods Company.

"I will be at 510 Commonwealth Trust Building, between two and four p. m. to-day, and a note sent to

me at that address will serve to make any engagement you may desire.

"Yours truly,
"CHARLES A. BUCHHOLZ."

The court refused a demurrer to the evidence, offered by the Barr Company, and instructed the jury as follows for plaintiffs:

"2.   The court instructs the jury that if you find from the evidence that the plaintiffs sold and delivered the supplies mentioned in evidence to the restaurant known as Barr's Cafe, and that the prices charged therefor were reasonable, and if you find that defendant William Barr Dry Goods Company by its course of dealing in 1906, led plaintiff to believe that C. A. Buchholz had authority to act for said defendant in the matter of buying supplies for said restaurant, then the said William Barr Dry Goods Company cannot escape liability to plaintiff for said supplies, if you find they were so furnished, by reason of any arrangement between said C. A. Buchholz and said William Barr Dry Goods Company unless knowledge of such arrangement or of facts from which such arrangement might reasonably be inferred was brought to the attention of plaintiff before plaintiff sold the supplies for said restaurant, if you find same were so sold."

The court gave the following instruction for defendant Buchholz:

"The court instructs the jury that if they believe from the evidence that at the time the supplies in question were delivered to Barr's Cafe the defendant William Barr Dry Goods Company was the owner and proprietor of Barr's Cafe and that at that time the defendant Charles A. Buchholz was only an employee of the defendant William Barr Dry Goods Company, and that at that time credit was given to Barr's Cafe by the plaintiff, then your verdict must be in favor of defendant Charles A. Buchholz."

For defendant Barr Company the court instructed as follows:

"1. The court instructs the jury that if you believe from the evidence that the defendant Buchholz rented the cafe at the Barr store and was operating it for his own account or for his own account jointly with the Barr Company at the time when plaintiffs furnished the goods in question, then plaintiffs cannot recover from the defendant Wm. Barr Dry Goods Company.

"2. The court instructs the jury that the undisputed evidence shows that the relation existing between the Wm. Barr Dry Goods Company and C. A. Buchholz, up to the time of Buchholz's conversations with Mr. Coutant, was that of lessor and lessee, respectively, of the restaurant known as Barr's Cafe,' and that the Barr Company as such lessor was not liable merely because of that relationship for supplies furnished to said cafe.

"3. The court instructs the jury that even if you beieve from the evidence that in conversation with Mr. Buchholz, Mr. Coutant promised in effect that the Barr Company would pay any losses resulting from the continued operation of the cafe, nevertheless, such promise will not make the defendant Barr Company liable to the plaintiffs in this case."

1. Defendant did not form a partnership and could not have done so for the reason the Barr Company being a corporation, was incapacitated to enter into a partnership with an individual. [Aurora State Bank v. Oliver, 62 Mo. App. 390; Morawetz on Corporations, sec. 42.] But the case was not submitted to the jury on the theory that the Barr Company was liable as the partner of Buchholz but upon the theory that said company, by its conduct, led plaintiffs to believe that Buchholz had authority to act for it in the matter of buying supplies for the restaurant.

A. W. Franz, one of the plaintiffs, testified he did

not know who owned the cafe; that the supplies were sent to the Barr Company's building and everything was billed to Barr's Cafe and the bills sent to it; that he did not know how the business was conducted between the two defendants and never inquired, and was not notified by the Barr Company that it was not responsible for supplies furnished the cafe; that all accounts previous to the one sued on were paid monthly by Buchholz's checks, and that orders for supplies came over the telephone from Buchholz or his wife.    So far as the evidence discloses, the arrangement between the Barr Company and Buchholz for conducting the cafe was never published but kept as a secret between themselves.    The cafe was in the Barr Company's building, was advertised on its elevators as its cafe, and its customers were notified where it was located.    There was nothing to notify the public, or persons dealing with it, that this department (the cafe) was not owned by the Barr Company and conducted, as was all other departments of the store, under the supervision of a manager, hence the public, including plaintiffs, had a right to assume that in furnishing supplies to the cafe they were furnishing them to the Barr Company, and we think instruction number 2, given for plaintiffs, properly stated the law of the case.

2.    The instruction given for defendant Buchholz is erroneous, for the reason there is no evidence showing or tending to show that Buchholz was an employee of the Barr Company at the time the supplies sued for were furnished.    Buchholz's evidence shows that he was not an employee but a lessee of the cafe, paying as rent a stipulated per cent on the gross receipts.    Coutant's promise to take care of the losses and of Buchholz, if made, was not the making of a new contract but a promise which might, in the light of Buchholz's evidence, be construed to mean that the Barr Company would, sometime in the future, make a new contract

with him for the future operation of the cafe, or that it would pay the losses and reasonably compensate him if he would continue the cafe under the existing arrangement. This promise did not, as the court instructed the jury, make the Barr Company liable to plaintiffs.

3. Defendant Barr Company strenuously contends that the statement filed before the justice is on the theory that both defendants were jointly liable and plaintiffs cannot recover against it alone. This contention would deserve consideration if the suit was based upon an express contract where, to recover, plaintiffs would be required to prove the contract as laid. But the suit is an ordinary action in assumpsit for the reasonable price of goods sold and delivered and plaintiffs may recover, if their evidence shows either of defendants is liable. The joinder of an improper party defendant in such an action will not defeat a recovery of the proper party defendant. [Miller Lumber Co. v. Oliver, 65 Mo. App. 435; Jones v. Railroad, 178 Mo. 528, 77 S. W. 890.] On Buchholz's own evidence the debt was contracted by him, and under his agreement with the Barr Company he is personally liable for it and a verdict should have been directed against him. The verdict of the jury absolved him from his primary liability for the debt, and as defendants on the trial contested as between themselves their respective liability for the debt, the judgment, if permitted to stand, will effectually defeat any recovery by the Barr Company against Buchholz. This would be a manifest injustice, wherefore the judgment is reversed and the cause remanded. All concur.