NADAU, Respondent, vs. WHITE RIVER LUMBER COMPANY, Appellant.

*November 6, 1889 — March 18, 1890.*

*Master and servant: Personal injuries: Dangerous place for work: Contributory negligence: Court and jury: Assumption of risks: Burden of proof: Evidence: Interpreters: Damages.*

1. The plaintiff, who was about nineteen years old and wholly unaccustomed to machinery, was employed by the defendant and set to work in its saw-mill in a narrow alley, about nineteen inches wide, between two sets of rollers which carried the lumber, etc., from the saws. On one side of the alley were two beveled cogwheels, eighteen inches above the floor, revolving inward, wholly uncovered on the side towards the alley, and covered on top so as to be partially concealed from view. While working in such alley plaintiff's leg was caught in said gearing and crushed. The evidence tended to show that the gearing might have been covered on the side at slight expense and without impairing its usefulness. *Held,* that the jury were justified in finding that defendant was guilty of negligence in not furnishing a reasonably safe place for plaintiff to do his work.

2. Defendant's foreman, who employed the plaintiff and was informed of his inexperience, should have warned him of the dangers incident to the employment; and the negligence of the foreman in that respect was the negligence of the defendant.

3. The place where he was to work was pointed out to the plaintiff, but the evidence tended to show that it was pointed out to him from a place where the gearing could not be seen. He had worked in the alley five days or more before the accident. He testified that he did not know of the existence of the gearing until he was caught by it. *Held,* that the question of contributory negligence was one for the jury.

4. The burden of proving that an employee assumed a risk not usually attendant upon his employment, is upon the employer.

5. Evidence that it was customary in other mills to cover such gearing was competent on the question whether the defendant was negligent in not covering it in its mill.

6. It being manifest that the gearing could have been covered on the side, there was no error in permitting witnesses to testify to that fact.

Nadau vs. White River Lumber Co.

7. The plaintiff having been employed by defendant's foreman through an interpreter, a witness who was present was properly allowed to testify to what the interpreter then told the plaintiff as to what the foreman said.

8. A verdict of $9,650 for injuries to a young man necessitating the amputation of his leg above the knee, *held* not excessive.

APPEAL from the Circuit Court for *St. Croix* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The respondent brought this action to recover damages for an injury which he received while working for the appellant in its saw-mill. The injury was received by having his leg caught in a cog-wheel gearing, which was in the vicinity of the place where the plaintiff was at work, and crushed so that it became necessary to amputate the leg above the knee. On the trial the plaintiff recovered a verdict, and from the judgment entered on the verdict the defendant appeals to this court.

There are certain facts in the case about which there is no dispute. It is undisputed that the plaintiff, at the time of the injury, was about nineteen years old. That until he commenced work for the defendant he was wholly unaccustomed to working in a saw-mill, or working in or about machinery. His principal business had been working in the woods, getting out logs, and on drives on the rivers. That at the time he sought for employment from the defendant he desired to get employment on a drive, and not in the mill; and that the foreman of the defendant, who employed him, was told that he had no experience in working in a mill, and would prefer some other employment. The evidence of the plaintiff tends to prove that when the plaintiff stated that he did not want to work in the mill, and preferred other work, the foreman of the defendant told him he would give him an easy place, and one not dangerous, and showed him the place where he was to work.

The plaintiff was employed and set at work to pick up the edgings which came down with the boards from the edger, and throw them upon what was called a "slasher."

The mill in which he was set at work is a large double mill. The main saws were at the north end of the mill. The plaintiff was set at work on the west side of the mill, and alongside of a set of rollers which carried the lumber and edgings from the edger north of him, and by where he was placed; and it was his duty to pick up from the rollers the edgings, and throw them east, across the rollers, and onto the slasher. Immediately behind where the plaintiff was at work was a large set of rollers, which carried the timber and slabs which came from the rotary saw south, to the south part of the mill, and past the place where plaintiff was at work. This large set of rollers was driven by a long shaft, which was about twenty inches above the level of the floors where the plaintiff was at work, and extended considerably further south than it was necessary for the plaintiff to move in doing his work. This long shaft was covered on the top by a plank, about a foot wide, its whole length. Between this covered shaft and the set of rollers which carried the edgings there was an alley about eighteen or nineteen inches wide; and it was in this alley the plaintiff was to do his work. In doing his work, his back would be towards this long shaft. This long shaft was driven by another vertical shaft, which came up from below, through the floor, under the plank which covered the long shaft. The vertical shaft carried on its top a beveled, horizontal cog-wheel, which matched in a beveled, vertical cog-wheel, of about the same size, attached to the long covered shaft. These wheels turned inwards from the alley in which the plaintiff was at work, and they were under the plank which covered the long shaft. The point of contact of the beveled cog-wheels was about eighteen inches above the floor where the plaintiff was at work, and eight or ten inches be-

Nadau vs. White River Lumber Co.

low the plank that covered the long shaft. On the side where the plaintiff was at work there was no covering, either of the long shaft or the upright shaft, and the horizontal cog-wheel on the top of the vertical shaft came nearly or quite as far towards the alley where plaintiff was at work as the plank covering over the long shaft, so that the clothing of a person passing along this alley, close to the covering, might be caught by these cog-wheels and drawn into them.

The plaintiff had worked in this alley five days before the accident occurred; and he claims, and the evidence tends to show, that at the time of the accident he was at work near this upright shaft, and, as he stooped down to pick up the edgings from the rollers in front of him, with his back towards the shaft, the cog-wheels caught his pants, and drew his leg into the wheels, and crushed it. The evidence also tends to show that in doing his work in the alley it was only occasionally that it would be necessary for the plaintiff to go as far south as to pass by the upright shaft and cog-wheels. As a general rule, he would do his work at a point considerably nearer to the edger than where the cog-wheels were placed. The evidence also shows that when the foreman employed the plaintiff, and ordered him to work at the place mentioned, he did not in any way point out to him the location of this set of cog-wheels, or warn him as to the dangerous character of the wheels, or, in fact, give him any instructions or warning. The plaintiff testified on the trial that he had not noticed these wheels until he was caught by them and injured; that up to that time he had not looked for them, and did not know they were there. They were uncovered on the side next to him, and he could have readily seen them had he looked in the direction of them. The plaintiff gave evidence tending to show that these wheels, in the situation they were in, were dangerous to persons whose duty it was to work in the nar-

row alley opposite to them, and also evidence tending strongly to show that ordinarily wheels situate as these were, were covered not only on the top but on the side; that they could be so covered without any injury to their efficiency, and at a very trifling expense.

The jury found a general verdict in favor of the plaintiff, and assessed his damages at the sum of $9,650. The jury also answered the following interrogatories: "*First.* Did the defendant exercise ordinary care in placing in its mill the machinery by which the plaintiff was injured? We answer, 'No.' *Second.* Did the defendant exercise ordinary care in running its mill with the machinery in the condition in which it was at the time the plaintiff was injured? We answer, 'No.' *Third.* Was the machinery, in the condition in which it was at the time of the injury, dangerous? We answer, 'Yes.' *Fourth.* Did the defendant know that said machinery was dangerous? We answer, 'Yes.' *Fifth.* Did the defendant have reasonable cause to believe that said machinery was dangerous? We answer, 'Yes.' *Sixth.* Ought the defendant to have known, by reasonable care and diligence, that said machinery was dangerous? We answer, 'Yes.' *Seventh.* If you answer that said machinery was dangerous, was its dangerous character apparent and obvious to the senses? We answer, 'It was not, to an inexperienced person.' *Eighth.* Did the plaintiff know, while in the employ of the defendant and prior to said injury, that said machinery was dangerous? We answer, 'No.' *Ninth.* Could the plaintiff have known that said machinery was dangerous, by the exercise of reasonable care and diligence? We answer, 'Yes, if he was informed of the danger; but he was not informed.' *Tenth.* Did the plaintiff's carelessness contribute to said injury? We answer, 'No.' *Eleventh.* Did the plaintiff, prior to the injury, have sufficient knowledge to comprehend the dangers incident to his employment? We answer, 'No.' *Twelfth.*

Could the plaintiff, by the exercise of ordinary care, have avoided said injury? We answer, 'No.' *Thirteenth.* If you answer the eleventh interrogatory, 'No,' did the defendant know, or have reasonable cause to know, of the plaintiff's said ignorance and inexperience? We answer, 'Yes.' *Fourteenth.* Was the usual and customary means adopted in the mill in question to guard against accident by the cog-wheels and gear where the accident occurred? We answer, 'No.'"

For the appellant there were briefs by *Miles & Shea,* and oral argument by *J. J. Miles.* They contended, *inter alia,* that the servant assumes all such risks as the employer by the exercise of reasonable care and diligence could not have become aware of and provided against, and such as the employee from the nature of the business as ordinarily conducted must have known when he embarked in the service, and also those which the exercise of his opportunities for inspection while giving diligent attention to such service would have disclosed to him. *Eicheler v. Hanggi,* 40 Minn. 263; *Balle v. Detroit Leather Co.* 41 N. W. Rep. (Mich.), 216; *Stephenson v. Duncan,* 73 Wis. 404; *De Forest v. Jewett,* 88 N. Y. 264; *Gibson v. E. R. Co.* 63 id. 449; Thomp. Neg. 1001–1016; Wood, M. & S. 382; *Dorsey v. Phillips & C. Const. Co.* 42 Wis. 583; *Hathaway v. M. C. R. Co.* 51 Mich. 252. The plaintiff was as competent a judge of the dangers of the machinery as any expert, and ought not to recover. *Naylor v. C. & N. W. R. Co.* 53 Wis. 661. The fact that he was a minor does not alter the rule. *Buckley v. Gutta P. & R. Mfg. Co.* 113 N. Y. 540; *Hickey v. Taaffe,* 105 id. 26; *De Graff v. N. Y. C. & H. R. R. Co.* 76 id. 125; *McGinnis v. Canada Southern Bridge Co.* 49 Mich. 466; *Jones v. Florence Mining Co.* 66 Wis. 268; *Anderson v. Morrison,* 22 Minn. 274; *Fones v. Philips,* 39 Ark. 17, 43 Am. Rep. 264. If he had the knowledge or the means of knowledge by the exercise of ordinary observation he ought to

have known the risks to which he was exposed, and can not recover. *Perigo v. C., R. I. & P. R. Co.* 52 Iowa, 276; *Clark v. St. P. & S. C. R. Co.* 28 Minn. 128; *Russell v. M. & St. L. R. Co.* 32 id. 230; *Michigan Cent. R. Co. v. Smithson,* 45 Mich. 212; 2 Thomp. Neg. 980; Beach, Contrib. Neg. 362; *Probert v. Phipps,* 149 Mass. 258; *Pederson v. Rushford,* 41 Minn. 289; *Mantel v. C., M. & St. P. R. Co.* 33 id. 62; *Melzer v. Peninsular Car Co.* 76 Mich. 94.

For the respondent there was a brief by *Rusk & Boland,* and oral argument by *L. J. Rusk.*

The following opinion was filed December 3, 1889:

TAYLOR, J. The learned counsel for the appellant claims that the trial court erred in not nonsuiting the plaintiff upon its motion on the trial, upon two grounds: *First.* They claim that the evidence fails to show any negligence on the part of the defendant in constructing the machinery in the mill, or in neglecting to cover the cog-wheels in the vicinity of the place where the plaintiff was placed to do his work, or in failing to instruct the plaintiff as to the nature of his work when it employed him, or in failing to point out to him the dangerous position of the cog-wheels in the immediate vicinity of the place he was at work; and, *second,* on the ground that plaintiff was guilty of contributory negligence; that, under the evidence, it must be conclusively held that the plaintiff was aware of the situation of the cog-wheels before the accident happened, and that he had sufficient knowledge to know and fully comprehend the dangerous character of said wheels; and consequently he assumed the danger incident to his work at the time and place of the accident.

After a full consideration of all the evidence in the case, we have no hesitancy in saying that there was an abundance of evidence given on the part of the plaintiff tending to show that the place where the plaintiff was set to per-

form his work was not a reasonably safe place, on account of the immediate vicinity of the uncovered cog-wheels. This court has frequently decided that the law demands of a master or employer that he shall furnish a reasonably safe place in which the employee is to do his work. If the master fails in this respect, he is guilty of negligence; and if an injury occurs to the employee by reason of the dangerous nature of the place where the employee is at work, without any negligence on the part of the employee which contributed to the injury, the employer is responsible to the employee for the damages sustained by him. This rule has been frequently affirmed by this court, and there is no necessity of calling attention to the uniform decisions of other courts sustaining the rulings of this court on this question. Upon this question, see *Dorsey v. Phillips & C. Const. Co.* 42 Wis. 583; *Bessex v. C. & N. W. R. Co.* 45 Wis. 477; *Hulehan v. G. B., W. & St. P. R. Co.* 58 Wis. 319; *Heine v. C. & N. W. R. Co.* 58 Wis. 525, 531; *Hulehan v. G. B., W. & St. P. R. Co.* 68 Wis. 520, 526.

The question in this case was clearly a question for the jury. Was it a reasonably safe place for the plaintiff to do his work? What are the facts? The plaintiff was to work in a very narrow alley, not to exceed nineteen inches in width. On the side of this alley, and behind him where he was doing his work, and at a point where it was necessary for him to pass at times in doing such work, was a set of heavy cog-wheels, revolving inward, about eighteen inches above the floor, wholly uncovered on the side next the alley, and covered on the top, so as to be to some extent obscured from the sight of the person working in the alley, and yet revolving so near the alley that the clothes of the employee passing along by them could be readily seized by the revolving wheels, and the limbs of the employee drawn into and crushed by them. We are clearly of the opinion that the jury were justified in finding that the defendant

was guilty of negligence in not furnishing a reasonably safe place for the plaintiff to do his work. No intelligent man could well be mistaken as to the dangerous character of this place, especially to a workman unaccustomed to working in a mill and wholly unacquainted with the working of machinery in general.

There was also sufficient evidence tending to show that generally mills constructed as this was had this gearing covered on the sides as well as on the top. There being no reason why it could not as well be covered as to run uncovered, and the trifling expense of covering the same, fully justified the jury in answering the first and second questions submitted to them in the negative, and the third, fourth, and sixth in the affirmative. The danger of accidents resulting from the use of such uncovered cog-wheel gearings had become so manifest, especially where run in the immediate vicinity where men are necessarily at work, that the legislature of this state in 1887 made the neglect to cover such gearings an offense. The language of the statute is as follows: "All belting, shafting, gearing, hoists, fly-wheels, elevators, and drums of manufacturing establishments, so located as to be dangerous to employees when engaged in their ordinary duties, shall be securely guarded or fenced, so as to be safe to persons employed in any such place of employment." [Laws of 1887, ch. 549, sec. 2.] That this set of cog-wheels was dangerous even to the most experienced workman, can hardly admit of a doubt. A slight forgetfulness on the part of the workman while attending to his work might bring him in contact with it. An accidental slip while at work might bring his clothing and limbs in contact with it; and we have no hesitancy in holding that when the employer places such a dangerous piece of machinery, into which his employee by the least forgetfulness or unavoidable accident may be thrown and seriously injured, in the immediate vicinity of a place where

his employee must do his work, he fails to furnish h'm a reasonably safe place for doing his work, and is guilty of gross negligence, especially when the usefulness of the machine is not enhanced by reason of its being uncovered, and when the expense of covering would be a mere trifling sum. The case of the plaintiff was fully sustained by the evidence on this point.

We are equally well satisfied that the foreman of the defendant was also negligent in not pointing out to this inexperienced youth the dangers which were incident to his employment when he employed him. The foreman was warned at the time that the plaintiff was wholly without experience in doing work in a mill or in the vicinity of any machinery; that, although he was of such an age as to comprehend that there were dangers in being employed in a mill which were not attendant upon other employments, yet as to the particular nature of such attendant dangers he was wholly ignorant. Under such circumstances, all courts hold that it is the duty of the employer to instruct the employee as to such attendant dangers, and put him on his guard against them. See *Strahlendorf v. Rosenthal*, 30 Wis. 674, 678; *Jones v. Florence Mining Co.* 66 Wis. 268, 277; *Coombs v. New Bedford Cordage Co.* 102 Mass. 572, and other cases cited in the opinion in *Jones v. Florence Mining Co., supra*.

There was evidence which clearly sustains the finding of the jury " that prior to the injury the plaintiff did not have sufficient knowledge to comprehend the dangers incident to his employment," as well as the finding that the defendant knew, or had reasonable cause to know, that the plaintiff was ignorant and inexperienced. It is hardly necessary to cite authorities to show that the defendant in this case is bound by the acts of its foreman in employing and setting the plaintiff at work in the manner he did.

The learned counsel insist that, if it be admitted that

there is evidence sufficient to show that the defendant was guilty of negligence which contributed to the accident, still the plaintiff cannot recover, because he was guilty of contributory negligence in commencing to work in the place pointed out to him by the foreman, and continuing to work there five days and more. It is urged that upon all the evidence in the case it is conclusively established that the plaintiff must have known of the existence of the uncovered gearing, and have fully comprehended the dangers incident to its condition in his immediate vicinity; and therefore, under the general rule, he assumed the dangers incident to his employment, and so cannot recover. Whether the plaintiff knew what is claimed by the learned counsel for the defendant, was not a question of law upon all the evidence, but a question of fact, and was therefore properly submitted to the jury, and they have found against the contention of the learned counsel for the defendant; and that finding is sustained by sufficient evidence. The learned counsel contend that the foreman pointed out the place where the plaintiff was to work before he was employed. It is true the evidence shows that he was taken into the mill, and the place pointed out; but it does not show that he was taken into the narrow alley in which he was to work, and where he might, if his attention had been called to the machinery, have seen this dangerous gearing. The evidence tends to show that the place was pointed out from a point in the mill where this gearing could not be seen. The employee, when accepting an employment, assumes all the risks that are reasonably incident to such employment, and no other, unless the unusual and unreasonable risks of such employment are open and visible, and known to and comprehended by the employee; and in such case he assumes all the risks so known to him, whatever they may be. This I have sometimes thought to be a harsh rule for the workman, and in many cases shields the employer from the re-

sults of carelessness and negligence on his part which border upon criminality; yet the rule seems to have received the sanction of the highest courts, and is sustained by the highest authority.

The learned counsel for the defendant also contend that the presumption is that the plaintiff assumed all the dangers incident to his employment, and therefore the burden of proof was upon him to show that he did not know of the danger connected with this uncovered gear. We think in this the learned counsel are in error. The employee is only presumed to assume the dangers usually attendant upon his employment; and, when he shows that he has been injured by a cause or danger not usually or reasonably attendant upon his employment, he is then entitled to recover, unless it be shown that he knew of such unusual and unreasonable danger, and fully comprehended its nature, at the time of his employment or before the accident happened. The evidence in this case having established the fact that the injury to the plaintiff was caused by a danger which ought not to have attended his employment, and would not have attended it if the defendant had performed its whole duty towards him, there is no presumption that the plaintiff assumed the unusual risk, and the burden of proof is on the defendant to show affirmatively that he did, to the same extent that it is on the defendant to show any other contributory negligence on the part of the plaintiff. The assumption of an unusual risk in any employment by the employee is in the nature of negligence on his part, which, like any other contributory negligence, prevents his recovery.

In the case of *Swoboda v. Ward*, 40 Mich. 420, 424, the learned court say: "Where the servant shows that the injury he received was in consequence of an increased risk,— one not ordinarily incident to the employment,— growing out of the master's negligence, the burthen of proof is upon

the master to show that the servant knew of and understood the increased danger." The same rule was laid down by this court in an opinion by the late learned Chief Justice RYAN, in *Dorsey v. Phillips & C. Const. Co.* 42 Wis. 583. In that case the learned chief justice said, speaking of the plaintiff in that action: "If he knew, or ought reasonably to have known, the precise danger to him, in the course of his employment, of the cattle chute in question, and saw fit, notwithstanding, to continue in his employment, he might be held to have assumed the extraordinary risk, as well as the ordinary risks, of his service. . . . But it appears to us that this consequence of acquiescence ought to *rest upon positive knowledge* . . . *of the precise danger assumed,* not on vague surmise of the possibility of danger." In *Rummell v. Dilworth,* 111 Pa. St. 343, 351, the court say: "The plaintiff cannot be supposed or assumed to have accepted in advance a peril which he could not estimate, and the extent of which, for lack of experience, he could not have known. Where there is any doubt whether the employee was acquainted, or ought to have been acquainted, with the risk, the determination of the question is necessarily for the jury." See, also, Cooley on Torts, 661, and cases cited.

Undoubtedly, the correct rule of law has been laid down in the cases above cited. The authorities sustaining the rule are very numerous. Under the rule, as above stated, upon a finding supported by the evidence that the defendant was in default in not furnishing a safe place for the plaintiff to do his work, and the injury to the plaintiff having occurred from its default in that respect, the plaintiff was entitled to recover, unless it was shown by competent evidence that the plaintiff knew of the dangerous gearing in his immediate vicinity, and fully comprehended its dangerous character. The only evidence in the case tending to show that he knew of the danger or comprehended it,

Nadau vs. White River Lumber Co.

was the fact that he had worked near it for five days before the accident happened, and might have discovered it if he had looked for it. The plaintiff testified that he did not know of its existence until he was caught by it. Upon this state of the case, the court could not say, as a matter of law, that he did know of its existence or that he comprehended its dangerous character. There was the fact that he had worked five days very near it, and could have seen it if his attention was called to it; but this evidence is opposed by the statement of plaintiff, under oath, that he did not see or know of its existence. The learned counsel for the appellant insist that it is absurd to say the plaintiff did not know of its existence. We do not think it is necessarily so. This young man, with no experience or knowledge of the machinery of a mill, and having no reason for supposing that there was any dangerous machinery in his vicinity, and while in the mill at work having his attention constantly turned in another direction, might easily have failed to observe this particularly dangerous piece of machinery. The noise and confusion of sounds in a great saw-mill, when running, would distract the attention of one wholly unaccustomed to work in it; and he would be very likely to keep his attention fixed upon the work he had to do, rather than to be looking about him, to see how the machinery was placed, or to discover its dangerous character. In any view of the case, it was a question for the jury, upon the evidence. *Hathaway v. M. C. R. Co.* 51 Mich. 253; *Huizega v. Cutler & S. Lumber Co.* 51 Mich. 272. The jury having found in favor of the plaintiff upon what appears to be sufficient evidence, this court cannot reverse the judgment on the ground that it is not supported by the evidence.

The only other questions in the case are the exceptions of the defendant to the evidence offered by the plaintiff, and to the instructions of the court to the jury.

The plaintiff offered the evidence of witnesses to show that it was customary in other saw-mills to cover gearing of the kind in question. This was clearly competent on the question as to whether the defendant was negligent in not covering it in *its* mill. See *Huizega v. Cutler & S. Lumber Co.* 51 Mich. 276; *Swoboda v. Ward*, 40 Mich. 423.

To our minds, it was hardly necessary to call experts to prove that this piece of machinery, placed as it was, ought to have been covered. There was no error in permitting the witnesses to testify that this gearing could have been covered on the side. That was a fact perfectly plain to any one; and the only real question was whether it could have been so covered without interfering with its usefulness. If it could, common prudence required that it should be covered.

The testimony of Paul King was objected to. He was present when the defendant employed the plaintiff, and King was called to state what was said at the time between the foreman and the plaintiff's brother. It seems the plaintiff could not talk English, but his brother could, and he did the talking with the foreman, and interpreted it in French to his brother and King. King was permitted to state what the brother of the plaintiff said at the time as to what the foreman said as to giving him a safe place or there being no danger. It is understood that what is said to a person who acts as an interpreter between the person speaking and other third parties will be repeated to such other parties in the language which they understand. The person speaking through an interpreter virtually says to such other person, " You listen to what the interpreter says, and he will tell you what I say;" and what the interpreter says is to be taken as the language of the person speaking through him, and may therefore be admitted in evidence against him, under the rule that the statement of a third person is receivable in evidence against a party who has

Nadau vs. White River Lumber Co.

expressly referred another to him for information as to any matter. See 1 Greenl. Ev. §§ 182, 183. The evidence was properly received.

The learned counsel excepted to the instructions of the court to the jury; and, as we read the printed case, all the instructions were generally excepted to. After a careful reading of the instructions, they appear to be a correct statement of the law applicable to the facts of the case, and are, on the whole, sufficiently favorable to the defendant.

It is also urged that the damages assessed are excessive. Although the verdict is large, there is no just reason for saying that they are out of proportion to the injury received by this young man. The loss that he has sustained is one that no amount of money can fully compensate. Although the sum awarded him may be a heavy burden for the defendant to carry, it certainly cannot be said that it is more than a just compensation for the plaintiff's injury.

On the whole, the case seems to have been fairly tried, and we find no errors in the record which call upon this court to reverse the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.

On a motion for a rehearing there were briefs for the appellant by *Miles & Shea*, attorneys, and *Pinney & Sanborn*, of counsel, and a brief for the respondent by *Rush & Boland*.

The motion was denied March 18, 1890.

See note to this case in 43 N. W. Rep. 1135.— REP.