217    121
223    2525

# McGeehan, Appellant, v. Hughes.

*Negligence—Master and servant—Duty of master—Safe appliances.*

Where a master voluntarily subjects his servant to dangers, such as, in good faith, he ought to provide against, he is liable for any accident arising therefrom. The servant does not stand on the same footing with the master. His primary duty is obedience, and if, when in the discharge of that duty, he is damaged, through the neglect of the master, it is but meet that he should be recompensed. The employer is bound to furnish and maintain suitable instrumentalities for the work or duty which he requires of his employees, and failing in this, he is liable for any damages flowing from such neglect of duty.

In an action by a stevedore against his employer to recover damages for personal injuries sustained while engaged in unloading iron ore from a ship, it appeared that the ore was being unloaded by means of buckets. The evidence showed that the bail or handle by which the bucket was attached to the hoisting tackle was torn from the side of the bucket, during an ascent, and the contents, about 4,000 pounds of ore, dropped back, some of it striking plaintiff. It appeared from the uncontradicted testimony of a naval architect, familiar with appliances for loading and unloading ships, and having knowledge of the tensile strength of iron and steel, that the safety point for loading the bucket was 1,500 pounds, while the ultimate breaking point was 6,000 pounds, thus providing for the usual factor of safety of four to one. *Held*, that the case was for the jury and that a verdict and judgment for the plaintiff should be sustained.

In an action by an employee against his employer to recover damages for personal injuries, it is not error to reject evidence as to methods and appliances which were in ordinary and general use, where there is no offer to follow this by evidence tending to show that the method used by the defendants was unusual, and was more dangerous it itself than the ordinary method.

Argued Jan. 10, 1907. Appeal, No. 248, Jan. T., 1906, by plaintiff, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1904, No. 1,366, on verdict for plaintiff in case of Bernard McGeehan v. William J. Hughes and Morris Boney, Jr., trading as Morris Boney & Son. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before MARTIN, P. J.

The facts are stated in the opinion of the Supreme Court.

When plaintiff was on the stand he was asked this question:

" Q. Is there any other kind of bucket you saw used for loading iron ore ?"

Objected to.

Objection sustained.

Exception for plaintiff. [1]

George B. Drake, plaintiff's witness, was asked this question :

" A. I have been quite familiar with the unloading and loading appliances around vessels in Buffalo and Cleveland and Ashtabula, and also in Chicago, and I have had more or less of it down here. Q. Will you state what is the method in ordinary and general use for the unloading of iron ore from vessels ? "

Objected to.

Objection sustained.

Exception for plaintiff. [2]

Francis McGlashen was asked this question :

" Q. Were these buckets used for anything else than marbella iron ore ? "

.Objected to.

Objection sustained.

Mr. Warner : I wish to show that these buckets, the construction of which I will explain later on, were used to carry all sorts of loads, irrespective of the weight.

Objected to.

Objection sustained.

Exception for plaintiff. [3]

Verdict for plaintiff for $10,000.

The court subsequently entered judgment for defendants non obstante veredicto.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions; (4) in entering judgment for defendants non obstante veredicto.

*Frederick H. Warner*, with him *Arthur B. Houseman*, for appellant.—The general test of negligence in regard to machinery has no application where the tool or instrument is

misapplied in its use at the special instance of the employer: Strawbridge v. Bradford, 128 Pa. 200.

Negligence was not a mere inference, but such an inference would be justified: Hughes v. Fayette Mfg. Co., 214 Pa. 282.

*A. L. Cameron* and *W. W. Smithers,* for appellees, were not heard, but in their printed brief said:

The presumption that a tool supplied by a master to his servant is reasonably fit and safe must be overcome by proof that the tool was in fact unfit and that the master knew or ought to have known that its use was dangerous: P. & R. R. R. Co. v. Hughes, 119 Pa. 301.

The mere fact that the bail broke raised no presumption of defect or negligence; the plaintiff was bound to show a cause for the breaking and also that such cause was chargeable to to defendants' negligence: Spees v. Boggs, 198 Pa. 112; McAvoy v. Woolen Co., 140 Pa. 1; Mixter v. Coal Co., 152 Pa. 395; Bradbury v. Coal Co., 157 Pa. 231; Johnston v. Turnbull, 124 Fed. Repr. 476.

OPINION BY MR. JUSTICE POTTER, February 25, 1907:

This was an action of trespass by an employee against his employers, to recover damages for personal injuries, sustained in the course of his employment, through the alleged negligence of the employers. The facts, substantially as stated by the trial judge, were as follows: The defendants, Morris Boney & Son, were stevedores. The plaintiff, Bernard McGeehan, a laborer in their employ, was injured by iron ore falling upon him from a tub or bucket hoisted from the hold of a vessel where he was employed with other men who were working for defendants. The bail or handle by which it was attached to the hoisting tackle, was torn from the side of the bucket, during an ascent and the contents, about 4,000 pounds of ore, dropped back into the ship, some of it striking plaintiff and inflicting the injuries which were the basis of his suit. The negligence with which defendants were charged was failure to supply a reasonably safe bucket of sufficient strength to hoist iron ore from the hold of the vessel.

Plaintiff's statement averred " that the said bucket fell by reason of a defect in the said handle or frame, and that the

said defendants were negligent in furnishing him, for use, an appliance so defective, which said defect could have been discovered by his said employers with proper care, and which said defect was unknown at the time, to this plaintiff."

The jury found a verdict for the plaintiff in the sum of $10,000, but the court below entered judgment in favor of the defendant non obstante veredicto, under the provisions of the Act of April 22, 1905, P. L. 286. Plaintiff has appealed, and assigns for error the exclusion of certain testimony, and the entry of judgment.

The first assignment of error complains of the exclusion of evidence as to the general use of other kinds of buckets for unloading ore, than that by which plaintiff was hurt. This error was rendered harmless by reason of the fact that defendants' foreman afterwards answered practically the same question, and the fact was undisputed that defendants had at that place two kinds of buckets in use, one with clamped bails and rivet holes, and the other with solid forged eye-plates in the bails or handles.

The second assignment of error complains of the rejection of evidence as to the methods which were in ordinary and general use, in unloading iron ore. If an offer had been made to follow this question by evidence tending to show that the method used by defendants was unusual, and was more dangerous in itself than the ordinary method, the question would have been admissible. In the form in which it was presented, and with no indication that it was to be followed with anything further, it was properly rejected.

The offer contained in the third assignment of error, to show that the buckets were used to carry all sorts of material, does not seem to have been relevant. But if it was, we do not see that its exclusion did any harm, for there was ample evidence to show that the defendants were using the buckets to carry loads of iron ore, to the extent of 4,000 pounds in weight. The testimony is uncontradicted that the buckets were of sufficient size when filled, to contain 4,500 pounds of iron ore. According to the evidence, the weak point in the construction of the bucket was in the handle or bail. It was the breaking or tearing out of the bail that caused the accident in this case.

The testimony of Francis McGlashen, a fellow workman,

who examined the bucket after the accident, was that the break in the bail was directly through one of the rivet holes. There was no testimony as to any cause of the breaking except overloading. All the witnesses agreed that the loads on the buckets were about 4,000 pounds each. George B. Drake, a naval architect and expert called by plaintiff, testified that the safety point in weight for such a bucket would be 1,500 pounds. If the bucket had had a bail, with a forged eye, the safety point would have been increased to 2,000 pounds.

The case for the plaintiff was abundantly sustained by the uncontradicted evidence of Mr. Drake, the naval architect, who showed thorough familiarity with appliances for loading and unloading vessels, and whose experience in the building of ships and vessels had fitted him to judge of the tensile strength of iron and steel. In his testimony he discussed the different kinds of buckets, their relative merits, the question of ordinary usage, and their tensile strength. In commenting on his evidence, the learned trial judge says that he " was not able to say whether the bucket in question was made of iron or steel," but the architect's estimate as to strength was founded upon steel and therefore was in that respect favorable to the defendants. The architect said that the safety point for loading was 1,500 pounds, while the ultimate breaking point was 6,000 pounds, thus providing for the usual factor of safety of four to one. As the evidence showed that the load placed in the bucket was 4,000 pounds, it is apparent that no attention was paid to the factor of safety, as this was considerably more than twice the weight which the buckets could safely carry. There is no force in the suggestion of the trial judge that loads of the same amount had frequently been placed in the buckets before without breaking. Continuous overloading could only result in producing a strain which would finally cause the bail to give away, just as it did. The evidence was certainly sufficient to submit to the jury as to the cause of the break. This was not the case of a mere guess as to how the accident happened. The value of the testimony of the naval architect was fortified by his long experience, which gave him unusual means of knowledge of the appliances in use in work of this character. It is difficult to see how a better witness for the purpose could have been produced, than one with expert knowledge of the

strength of materials, and of the methods usually employed in loading and unloading vessels by means of buckets and hoisting apparatus.

The general rule governing the liability of the employer in such cases, was stated by this court, in Patterson v. Pittsburg, etc., R. R. Co., 76 Pa. 389, as follows: "It is true the master is not responsible for accidents, occurring to his servant, from the ordinary risks and dangers which are incident to the business in which he is engaged; for in such case, the contract is presumed to be made with reference to such risks. But, on the other hand, where the master voluntarily subjects his servant to dangers, such as, in good faith, he ought to provide against, he is liable for any accident arising therefrom. . . . The servant does not stand on the same footing with the master. His primary duty is obedience, and if, when in the discharge of that duty, he is damaged, through the neglect of the master, it is but meet that he should be recompensed. . . . The employer is bound to furnish and maintain suitable instrumentalities for the work or duty which he requires of his employees, and, failing in this, he is liable for any damages flowing from such neglect of duty."

We are of opinion that under the evidence in this case, the questions were properly for the jury, and the court below erred in entering judgment for the defendants non obstante veredicto.

The fourth assignment of error is sustained, and in accordance with the precedent established in Hughes v. Miller, 192 Pa. 365, we remit the record to the court below, that such judgment may be entered in accordance with this opinion, as law and justice require.