### AMERICAN LOCOMOTIVE CO. v. WHITE.

(Circuit Court of Appeals, Third Circuit. May 6, 1913.)

No 1,694.

1. MASTER AND SERVANT (§ 270*)—INJURIES TO SERVANT—METHOD OF WORK—CUSTOMARY METHOD.

Where, in an action for injuries to a servant while assisting in raising a running board to the side of the boiler on a locomotive, plaintiff claimed negligence in the method selected by the foreman for the accomplishment of the work, and that it should have been done by raising the board by means of a crane, which was available, it was competent for plaintiff to prove, as evidence of negligence, though not in itself estab-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

lishing negligence, that defendant did not employ the customary method of doing the work, accompanied by further proof that the departure from the customary method increased the danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

2. MASTER AND SERVANT (§ 296*)—INJURIES TO SERVANT—"OBVIOUS AND IMMINENT DANGER."

An instruction that an injured servant would be guilty of contributory negligence if he exposed himself to a danger that was obvious and imminent was proper; the word "imminent" being used, not in its etymological sense, but as practically synonymous with "obvious."

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*

For other definitions, see Words and Phrases, vol. 6, pp. 4895, 4896.]

In Error to the District Court of the United States for the Western District of Pennsylvania; James S. Young, Judge.

Action by William H. White against the American Locomotive Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Reed, Smith, Shaw & Beal and George E. Shaw, all of Pittsburgh, Pa., for plaintiff in error.

John S. Weller, John O. Wicks, and Richard W. Martin, all of Pittsburgh, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. The facts of this case are as follows:

A locomotive built by the defendant company had been moved from the erecting shop into the yard, and was there undergoing inspection under steam by an agent of the purchaser. A running board attached to the left side of the boiler had been found to need straightening, and had been taken off and lowered to the ground. The straightening having been finished, a foreman in control of a gang of laborers undertook to replace the board, and in the course of executing his orders the plaintiff suffered the injuries complained of. The board was of steel, about 12 feet long and 23 inches wide, and weighed nearly 300 pounds. It was designed to rest upon two or three brackets, and thus supported was to be further secured by bolts. The brackets were about 9 feet from the ground, too high to permit the laborers to lift the board directly into place by hand. The foreman planned to move it up to the brackets by sliding it diagonally along certain projections on the front end of the locomotive, and in carrying out his plan the laborers were obliged to occupy more or less awkward and precarious positions on the locomotive at varying heights from the ground. At first they objected, but they finally obeyed the foreman's orders. For some reason not disclosed, and apparently not known, the board escaped from the laborers' control, knocked the plaintiff to the ground, and broke his thigh, injuring him severely and permanently. The negligence alleged is direct-

ing the work to be done by an unnecessarily dangerous method. It is alleged that the danger could have been much decreased, perhaps wholly avoided, by using a movable crane that appears to have been available.

[1] It is not disputed that the Pennsylvania act of 1907 (P. L. 523) made the foreman a vice principal, and the only questions therefore that call for notice are the questions raised by the fourth, fifth, and sixth assignments of error. Under the fourth and fifth it becomes necessary to inquire whether it is competent for a servant, as a part of his effort to prove the master's negligence, to offer evidence that the master did not employ the customary method of doing a particular act. The trial judge admitted evidence that some such device as a crane, or a derrick, was commonly used to do the work in question, and instructed the jury that "a departure from that custom would be some evidence of negligence." He did not say that a departure would of itself be sufficient evidence, but merely that it would be "some evidence"; and he immediately expanded the thought by adding:

" * * * Because, if a certain custom obtains and a certain manner of doing work, that is evidence that it is a proper way to do it, and a failure to do it that way would be evidence of negligence. You understand that—a departure from a general custom. But first you must determine whether there was such a custom. And if there was a general custom then you inquire, in the second place, whether there was a departure from that custom. And a simple departure from it would not be evidence, strong evidence, of negligence, because you must take into consideration the circumstances under which it was placed without the aid of a crane."

We see no error in these instructions. It is no doubt true that if a charge of negligence is based on the use of a particular machine, or on the employment of a particular method, the charge may perhaps be successfully met by evidence that the machine or the method was commonly employed in the business. And it is also true, as the Supreme Court of Pennsylvania has said in Cunningham v. Bridge Works, 197 Pa. 625, 47 Atl. 846, that:

"The party charging negligence does not show it by showing that the machine was not in common use."

But this means, we think, that such evidence alone is not sufficient; for other decisions of the same court make it clear that the evidence may sometimes be admissible. Indeed, in Cunningham's Case itself, Mr. Justice Mitchell, while declaring that a jury should always be cautioned against finding negligence "from the bare fact that the method was not in general use," goes on to say that such evidence—

"should not in the first instance be admitted on behalf of the plaintiff unless it tends to show that the method pursued was not only unusual but more dangerous in itself than the ordinary one." (Italics ours.)

That is to say, if it otherwise appear—as it did appear from the circumstances of the case now before us—that the method actually employed was unusually dangerous, evidence that common usage has employed a different method is competent (but of course not deci-

sive) on the question of the master's negligence. The Supreme Court of Pennsylvania has so ruled in several recent cases. In McGeehan v. Hughes, 217 Pa. 124, 66 Atl. 238, the court said:

"The second assignment of error complains of the rejection of evidence as to the methods which were in ordinary and general use, in unloading iron ore. If an offer had been made to follow this question by evidence tending to show that the method used by defendants was unusual, and was more dangerous in itself than the ordinary method, the question would have been admissible. In the form in which it was presented, and with no indication that it was to be followed with anything further, it was properly rejected."

In Hollis v. Widener, 221 Pa. at page 76, 70 Atl. at page 288, the following language is used:

" * * * It was certainly competent to show that the platform constructed by the defendant was not that in ordinary use for such purpose, and that its defective construction was the proximate cause of the plaintiff's injuries. Madara v. Pottsville Iron & Steel Company, 160 Pa. 109 [28 Atl. 639]. If the platform prepared by the defendant for the use of the plaintiff in the performance of his work was that ordinarily constructed and furnished for the purpose under like circumstances and conditions, it would certainly go far towards exculpating the defendant from any negligence on the ground of a defective or insufficient platform. If, on the contrary, it was not in ordinary use, but one which the testimony tended to show was dangerous, it might impose liability upon the defendant. The evidence on the question, if embodied in a proper offer, was, therefore, competent as tending to show failure on the part of the defendant to furnish a reasonably safe place for the plaintiff to perform the duties for which he was employed."

And on the second appeal of McGeehan v. Hughes, 223 Pa. 524, 72 Atl. 856, the court, while approving the decision in Cunningham v. Bridge Works, supra, and laying down as a general rule that "the test of negligence in method, in machinery, and appliances is the ordinary usage of the business," qualifies the rule as follows:

"It is, however, competent for a plaintiff to show that the method used by the defendant was unusual and more dangerous in itself than the customary method. McGeehan v. Hughes, 217 Pa. 124 [66 Atl. 238]."

And the federal courts furnish decisions that support the underlying reason for the rule. In Wabash Railway Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605, the Supreme Court refused assent to the proposition that ordinary care on the part of the master meant only such degree of diligence as is customary or is sanctioned by the general practice and usage that obtains among those intrusted with the management and control of similar enterprises. The exact point there was whether the railway company had exercised due diligence in the employment of a telegraph operator, and (with special reference to this particular subject) the court said:

" * * * And to say, as matter of law, that a railroad corporation discharged its obligation to an employé—in respect of the fitness of coemployés whose negligence has caused him to be injured—by exercising, not that degree of care which ought to have been observed, but only such as like corporations are accustomed to observe, would go far towards relieving them of all responsibility whatever for negligence in the selection and retention of incompetent servants. If the general practice of such corporations in the appointment of servants is evidence which a jury may consider in determining whether, in the particular case, the requisite degree of care was observed, such practice cannot be taken as conclusive upon the inquiry as to

the care which ought to have been exercised. A degree of care ordinarily exercised in such matters may not be due, or reasonable, or proper care, and therefore not ordinary care, within the meaning of the law."

This case was referred to with approval in Railway Co. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. Ed. 905. It was there argued that the court below had erred in declining to hold that the question, whether the defendant was liable for the injury complained of, depended on whether a freight train was handled in "the usual and ordinary way." The court had declined so to rule, and on the contrary had left it to the jury to say "whether the train was handled with ordinary care; that is, the care that a person of ordinary prudence would use under the same circumstances." This instruction was approved by the Supreme Court as embodying "one of the commonplaces of the law." Mr. Justice Holmes added:

"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not. Wabash Railway Co. v. McDaniels, 107 U. S. 454 [2 Sup. Ct. 932, 27 L. Ed. 605]."

Decisions to the same effect will be found in Bean v. Navigation Co. (C. C.) 24 Fed. 124, Home Stake Mining Co. v. Fullerton, 69 Fed. 924, 16 C. C. A. 545, and Nyback v. Lumber Co., 109 Fed. 732, 48 C. C. A. 632.

In the Eighth circuit the Court of Appeals has discussed an allied phase of the subject, and has cited numerous authorities in Chicago, etc., Company v. Egan, 159 Fed. at page 44, 86 C. C. A. at page 234. We quote from Judge Sanborn's opinion:

"* * * There are cases in which the act or omission is in itself so plainly negligent that the fact that other persons in the same or like circumstances have been guilty of it is futile to change its character or effect. Dawson v. Chicago, R. I. & P. Ry. Co., 114 Fed. 870, 872, 52 C. C. A. 286, 288; Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed. 529, 534, 63 C. C. A. 27, 32. But where the nature of the act or omission is of a doubtful character, as in the case in hand, the true test of actionable negligence is the degree of care which persons of ordinary intelligence and prudence commonly exercise under the same circumstances. If, in a given case, the care exercised rises to or above that standard, there is no actionable negligence. If it falls below it, there is. Hence in an action for damages for negligence evidence of the ordinary practice and of the uniform custom, if any, of such persons in the performance under similar circumstances of acts like those which are alleged to have been negligently done, is generally competent evidence, because it presents to the jury the correct standard for their determination of the issue whether or not the defendant was guilty as charged. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 416, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Union Pacific R. Co. v. Daniels, 152 U. S. 684, 691, 14 Sup. Ct. 756, 38 L. Ed. 597; Washington, etc., Ry. Co. v. McDade, 135 U. S. 554, 569, 10 Sup. Ct. 1044, 34 L. Ed. 235; Texas & Pac. R. Co. v. Barrett, 166 U. S. 617, 619, 620, 17 Sup. Ct. 707, 41 L. Ed. 1136; Choctaw, etc., R. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96; Charnock v. Texas & Pac. R. Co., 194 U. S. 432, 437, 24 Sup. Ct. 671, 48 L. Ed. 1057."

In Ohio, etc., Co. v. Hutchings, 172 Fed. 205, 96 C. C. A. 657, the same court said:

"A witness of 18 years' experience in mining, 12 or 14 of which was as a timberman, testified to what was customarily or usually done in mines to support treacherous and unstable ground and to protect the miners therefrom,

and then he was allowed to compare the ordinary practice with what he observed at the point of the accident. This was admissible. What was ordinarily done in other mines with reference to like conditions, while not the measure of reasonable care, is competent evidence thereof. Another witness of 12 years' experience as a timberman in mines, who was at the place of accident shortly after it happened, and who knew the character of the formation of the hanging wall, was allowed to testify that it was practicable to have supported it with headboard and stull. This also was admissible."

And in this circuit the subject is referred to by Judge Archbald—although not decided—in Haines v. Spencer, 167 Fed. on page 271, 92 C. C. A. on page 663:

" * * * And the rule as to this is the usage of the business, negligence not being imputable where the machinery in question is that which is generally employed. Higgins v. Fanning, 195 Pa. 599, 46 Atl. 102. It may be that, for the purpose of comparison, it would be admissible, in order to aid the jury in determining what is reasonably safe, to put other machines in evidence, which are in common and ordinary use in similar establishments. It is so held in several well-considered cases. Wheeler v. Wason Mfg. Co., 135 Mass. 294; Myers v. Hudson Iron Co., 150 Mass. 125, 22 N. E. 631, 15 Am. St. Rep. 176; Dolan v. Cotton Mills, 185 Mass. 576, 70 N. E. 1025; Nadau v. White River Lumber Co., 76 Wis. 120, 43 N. W. 1135, 20 Am. St. Rep. 29; Jones v. Railroad, 178 Mo. 528, 77 S. W. 890, 101 Am. St. Rep. 434. Although there are others, of equal authority, where it is held not; the cases even in the same jurisdiction not being altogether in harmony. Rooney v. Cordage Co., 161 Mass. 153, 36 N. E. 789; Ross v. Pearson Cordage Co., 164 Mass. 257, 41 N. E. 284, 49 Am. St. Rep. 459; Propsom v. Leatham, 80 Wis. 608, 50 N. W. 586; Carr v. American Locomotive Works, 26 R. I. 180, 58 Atl. 678; Wood v. Heiges, 83 Md. 257, 34 Atl. 872; Gravadahl v. Chicago Refining Co., 85 Ill. App. 342; Sisco v. Lehigh & Hudson R. R., 145 N. Y. 296, 300, 39 N. E. 958; Jacobson v. Cornelius, 52 Hun, 377, 5 N. Y. Supp. 306; Richmond Locomotive Works v. Ford, 94 Va. 627, 27 S. E. 509; Parlett v. Dunn, 102 Va. 459, 46 S. E. 467; McGovern v. Smith, 73 Vt. 52, 50 Atl. 549; Couch v. Watson Coal Co., 46 Iowa, 17; Bryce v. Burlington, etc., R. R., 119 Iowa, 274, 93 N. W. 275. It is justified in some of the authorities on the ground that, the conduct of the master being on trial, it is proper for the jury to know what appliances are in common use in the particular business involved. Jones v. Railroad, 178 Mo. 528, 77 S. W. 890, 101 Am. St. Rep. 434. And, confined to common usage, the objection to it is largely removed."

The part that usage should play in controversies like the case before us has been much debated, and the decisions thereon have by no means been uniform. Confining ourselves for the present to the point now in issue, we state as our opinion that a servant may be permitted to prove the common usage of the business, when he charges the master with negligence in doing some act that departs from the usage; but the proof should be accompanied by evidence that the departure complained of has increased the danger. The increased danger may appear from the circumstances of the act in controversy, or (in a proper case) it may be shown by the direct testimony of witnesses. The question in most issues of negligence is whether the defendant has used ordinary care under the particular circumstances. To establish his case, the plaintiff must prove the circumstances; and if negligence appear prima facie the defendant may then reply to the charge by evidence that his conduct has accorded with the common usage of the business. Undoubtedly the plaintiff may offer evidence in rebuttal to show that the defendant's

conduct was not in accord with usage, and if he may do this in rebuttal we cannot say that the trial court does not have the discretion to permit him to offer the evidence in chief. But neither in chief nor in rebuttal should a plaintiff be permitted to recover on mere proof of departure from custom, for such departure may be in the direction of greater safety as readily as in the direction of greater danger; he should always be required to prove further, somewhere in his case, that the departure has resulted in greater danger. The general subject of usage as a test of due care is carefully discussed in chapter 6 of 1 Labatt, Master and Servant (1904), page 109, and cases in great number are referred to in the notes. The questions urged by the plaintiff in error do not require us to pass upon the sufficiency of the evidence, but only upon its competency.

[2] The sixth assignment needs a few words only. Complaint is made because the trial judge, in explaining a servant's duty to take proper care, instructed the jury that he will be guilty of contributory negligence if he expose himself to a danger that is obvious and "imminent." The use of "imminent" is criticised, but we think without sufficient reason. The precise dictionary meaning of the word is hardly the proper test; the question is, What meaning would the jury attach to it as they heard it used? and we are satisfied from a reading of the whole charge that the meaning intended to be conveyed, and the meaning that the ordinary listener would carry away, was substantially the same as obvious, or plain, or clearly visible. The charge seems to use "obvious" and "imminent" as practically synonymous, and we think it would be unfair to hold the trial judge to a precision of utterance that is not easy to attain under the most favorable circumstances. A judge is responsible for what he puts into the minds of the jury; but he is safe enough ordinarily if he uses words as they are commonly understood, even if he thereby does some violence to etymology. Moreover, there is a good deal of support in the cases for the very word complained of; but we need not examine them, or pursue the subject further.

The judgment is affirmed.