## SCHENKEMEYER v. TUSEK.

(Circuit Court of Appeals, Third Circuit. Jan. 19, 1914.)

No. 1,784.

1. MASTER AND SERVANT (§§ 286, 289*)—INJURIES TO SERVANT—SAFE PLACE—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to plaintiff, a stonecutter, while attempting to cut a stone from a pile by the fall of the pile, due to inherent weakness in the manner in which it was piled together with the fact that other stones were leaned against the pile, evidence *held* to require submission of defendant's negligence and plaintiff's contributory negligence to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050, 1089, 1090, 1092–1132; Dec. Dig. §§ 286, 289.*]

2. TRIAL (§ 253*) — INSTRUCTIONS — REQUEST TO CHARGE — APPLICABILITY TO EVIDENCE.

Where, in an action for injuries to a stonecutter by the fall of a stone pile alleged to have been negligently constructed, it appeared that plaintiff at the time of the injury, as was customary and as he had been directed, went to the pile to split off a section of the last stone in the pile to take to his bench and there cut it, a request to charge that if the jury found that, if a trestle had been provided in cutting the stone and he was injured while cutting on the boards in or near the pile, he was guilty of contributory negligence and could not recover, was misleading and inapplicable to the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

3. MASTER AND SERVANT (§ 270*)—INJURIES TO SERVANT—METHODS OF WORK—CUSTOMARY METHOD—EVIDENCE OF NEGLIGENCE.

Where, in an action for injuries to a servant by the fall of a stone pile constructed without binding strips between the layers, it was competent to prove as evidence of negligence, though not in itself establishing negligence, that it was customary in piling such stones to use binding strips between the tiers, accompanied by further proof that the departure rendered the pile less stable and increased the danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

4. APPEAL AND ERROR (§ 1067*)—REVIEW—REQUEST TO CHARGE—REFUSAL—PREJUDICE.

> Where, in an action for injuries to a servant caused by alleged negligence in piling stones, the court gave a requested charge that, if the jury found from the evidence that the stone fell on plaintiff for some reason other than the defendant's faulty construction of the pile, a verdict must be for defendant, it was not prejudiced by the court's refusal to further charge that, if the jury were unable to find from the evidence definite proof of specific negligence without depending on probable theories or inferences as to a cause of the action, the verdict must be for defendant.

> [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. § 1067.*]

In Error to the District Court of the United States for the Western District of Pennsylvania.

Action by Paul Tusek against Charles Schenkemeyer, doing business as the Johnstown Marble & Granite Works. Judgment for plaintiff, and defendant brings error. Affirmed.

Forest & Percy Allen Rose, of Johnstown, Pa., and George E. Reynolds and Louis Caplan, both of Pittsburgh, Pa., for plaintiff in error.

John F. Gloeckner and S. G. Porter, both of Pittsburgh, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Paul Tusek, the plaintiff, brought suit and recovered a verdict against Charles Schenkemeyer, a citizen of Pennsylvania, for damages sustained by him while in defendant's employ. On entry of judgment thereon defendant sued out this writ.

[1] Turning first to the refusal of defendant's request for binding instructions, we find the evidence tended to show these facts: Schenkemeyer had a contract for erecting a building and had piled on the building lot sawed stone from which sills, lintels, etc., were to be cut. He had for several weeks employed some stonecutters, who split or cut from such piled stone such parts as were required, carried them to benches a short distance away, and there dressed them to size. Tusek, who was also a stonecutter, worked with these men eight or nine days before his injury, and pursued the same course. While so cutting off a piece of sawed stone preparatory to removing it to his bench, a number of stones fell from a pile and crushed his right arm so as to necessitate amputation. The charge of negligence was that the stones "had been piled in a careless, reckless, and negligent manner without binders, one stone on top of the other, * * * the stones lying lengthwise, * * * and with large stones about 7"x7"x7" standing on edge and leaning against the piles." And it was averred that:

> "By reason of the faulty and negligent construction of one of these piles of stone, and by reason of the large and heavy stones leaning against it, the place

in which plaintiff was required to work was dangerous and unsafe, and plaintiff's safety imperiled, and further, for the same reasons, one of these piles of stone fell onto the plaintiff and injured him."

The stones were piled by Louis Schenkemeyer, a son of defendant, who was in charge of the work, and Valentine Gabriel, a stonecutter. The testimony of the former is that all the sawed stones were placed in a single pile about 25 feet long and on sloping ground, one end of the pile being 3 feet lower than the other; and that the stones were laid crossways of the slope upon two rows of sleepers 4 inches square and about 8 feet long. Upon each of the stones in the lower course a tier of six stones, unconnected by any cross-stick or binder, was carried to the height of the pile, which was 42 inches. On end and leaning against the end of the pile were stones 11 inches square and 5½ feet long. His testimony, and that of several others, was that it was not customary in piling to put strips between courses of stone. The testimony of Gabriel, who was called by the plaintiff, differed from the foregoing, in that he said the stone was placed in separate piles, and the pile that fell on Tusek was about 4 feet high and 3 feet wide; that it stood by itself and was 18 inches or 2 feet from the stone on which Tusek was working when injured. Against this pile leaned on end four stones, two against the end 11 inches square and from 6½ to 7 feet long; the other two against the side about 5 by 10 and from 5 to 5½ feet long. He testified: That it was customary to place strips between the stones, and that they were used "to have the pile safe together; tight; and to keep the edge of the stone all right." That he called Schenkemeyer's attention to his not putting in strips and advised laying on the ground the pieces which were stood on end against the pile, but was told they were in a hurry to unload the car. It suffices to say, without detailing it, that there was evidence substantiating in some particulars both witnesses. Witnesses for the plaintiff testified that it was customary, and those for the defendant that it was not, to put strips or binders between the layers of stone. Coming down to the day of the injury, the proof is that on that morning, pursuant to orders given by Louis Schenkemeyer the night before, Gabriel, Tusek, and Friedman, another stonecutter, went to a pile to get some designated lots of stone. They in turn, and from time to time in the manner they had theretofore followed, split or cut and removed all the stones of that pile except the last one. It was too heavy for Tusek to move to his bench. Going between it and the adjoining pile, testified to by Gabriel, he measured off the desired length and, placing his pitching tool or chisel on the stone, struck two blows. As he struck the second blow, one of the large stones which was leaning against the next and last adjoining tier of six superimposed stones toppled over, carrying two rows of that tier with it, caught Tusek, and crushed his arm. Under these proofs, was the case for the jury?

There was evidence that the piles were separate. While it is now contended that Tusek jarred by his stroke the pile that fell and brought it down on himself, there was no testimony to support any such contention. It is true that Louis Schenkemeyer testified there were slabs or scantling under the single long pile to which he testified, yet the

same proof shows that these were about eight feet long, and there is no proof that the stone Tusek was cutting rested on a slab which extended under the adjoining stones which fell. That the two courses of the tier in question fell is clear; that the weight which caused them to fall was in part the leaning stone 11x11, which followed them and caught Tusek, was equally clear. If we add the facts that the ground was solid and the frost out, that heavy stones stood on end against the last unbound tier of a pile sloping down hill, and other large stones leaned against another side of this pile, we have every factor tending to show that the inherent instability of the pile, affected by no extraneous force, was the direct cause of Tusek losing his arm. Manifestly, the trial court would have erred had it held as a matter of law that from these facts no inference of negligence could be drawn. It will be observed that the negligence charged was not in failing to put binders across the stones. That was but one element of the negligence charged, proved, and to which the attention of the jury was called by the judge. To that was superadded the leaning on end of long stones 11 inches square against a tier of unbound stones and this upon sloping ground. In that regard the court, after referring to the piling without strips, said:

"That is the negligence asserted by the plaintiff, and that not only were they piled in that way without a binder, but that large stones (you have heard them described) were put against the ends of the pile, and that the absence of the stocks, the weight of the large stones against the ends, and that the incline of the ground, altogether tended to finally push this pile over upon the plaintiff while he was at work."

[2] The next question concerns contributory negligence. This is based on the court's denial of defendant's point that:

"If the jury find from the evidence that a trestle was provided for plaintiff's use in cutting the stone, and he was injured while cutting on the boards at stones in or near the pile, he is guilty of contributory negligence, and the verdict must be for the defendant."

This point does not correctly state the real situation; its affirmance would have been misleading, and the court was justified in refusing to so charge. It was based on the theory, wholly at variance with the proofs, that the plaintiff, instead of cutting stones at his bench, was cutting stones on boards in or near the pile when he was injured. This ignores the fact that he was not cutting stone. On the contrary, he was, as was customary and as his employer directed, at the stone pile to split off a section of the last stone in the pile to take to his bench to there cut it. That this was no evidence of contributory negligence, under the facts proved, is clear to us, unless the danger of the pile itself was so patent as in itself made one negligent who worked beside it. But that such was not the case has been determined by the verdict of the jury under the instruction of the court that:

"The man assumes the risks of the dangers of that employment, either that are pointed out to him or that he knows or are so obvious that he ought to have known, and therefore in this case you take into consideration all the evidence bearing upon that. Was this place so obviously dangerous to this plaintiff in working there that he ought to have seen the danger? Was it so imminently dangerous, so obviously dangerous, that he ought not to have continued work? If it was, then he would not be entitled to recover. He assumes

the risk of the employment. That is, he assumes the risk of those dangers which he sees or ought to have seen."

[3] It is also alleged the court erred in its instructions as to the bearing of the testimony that was given as to the alleged customary way of piling stones without strips. This subject of the relevancy of such testimony had the careful consideration of this court in American Locomotive Co. v. White, 205 Fed. 260, 123 C. C. A. 464, to which reference is made. We have carefully examined the proofs and the charge and are satisfied the court substantially observed these principles. As we stated before, the case, under the evidence or the pleadings, did not turn, nor did the court's charge make it turn, on whether or not it was customary to use binders. That fact was only an element in connection with the slope of the ground and the weighting of the pile with heavy leaning stones, in determining whether the stones were negligently piled. Had there been no testimony of any custom, the mere fact of the absence of any binders for a tier of comparatively narrow stones, standing on sloping ground and subjected to the weight of a heavy stone placed on end, would have, without any evidence of custom, been a proper factor for proof and consideration on the question of negligence.

[4] It is complained that the court refused defendant's point:

"If the jury are unable to find from the evidence definite proof of specific negligence, without depending upon probable theories or inferences as to the cause, the verdict must be for the defendant."

Was there error in refusing it? As bearing on the proofs in the case and the course of the trial, we are unable to understand what this point means. The court had already affirmed defendant's point that:

"If the jury find from the evidence that the stone fell upon the plaintiff for some reason other than faulty construction by the defendant, the verdict of the jury must be for the defendant."

If the two points in substance meant the same thing, it was a needless duplication. The point affirmed restricted the jury from basing their verdict on any other cause than negligent piling. We are not satisfied the defendant by the refusal of this point was or could have been wronged.

The foregoing and all other contentions have been carefully considered, and we find no grounds to justify our setting aside the judgment below. It is accordingly affirmed.